EASTERN PARALYZED VETERANS ASSOCIATION OF PENNSYLVANIA, INC., and James J. Peters

v.

Dudley R. SYKES, Commissioner, Philadelphia Department of Public Property, City of Philadelphia, and Southeastern Pennsylvania Transportation Authority.

Civ. A. No. 86–6797.

United States District Court, E.D. Pennsylvania.

Sept. 26, 1988.

---

Harvey Bartle, III, Peter Weidman, Teri S. Appelson, Dechert Price & Rhoads, Philadelphia, Pa., for Southeastern Pennsylvania Transp. Authority.

James D. Fornari, Richard M. Zuckerman, Jarblum, Solomon, & Fornari, P.C., Peter S. Greenberg, Schnader, Harrison, Segal & Lewis, Philadelphia, Pa., for plaintiffs and the Class.

Susan Shinkman, Deputy City Sol., Philadelphia, Pa., for City of Philadelphia.

## MEMORANDUM

NEWCOMER, District Judge.

This action focuses on the use of federal funds by the City of Philadelphia ("The City") and the Southeastern Pennsylvania Transportation Authority ("SEPTA") for the renovation of various subway stations and whether or not those renovations discriminate against the plaintiffs, an organization of wheelchair-bound individuals and its members, in violation of various federal statutes and regulations. To date, litigation has centered on section 504 of the Rehabilitation Act of 1973, *as amended,* 29 U.S.C.A. § 794 and 49 C.F.R. §§ 27.61—27.-67 (1981).

### I. *Procedural Background*

Following this Court's August 17, 1987, memorandum opinion, a status conference was convened. At that conference, the City's attorney informed the court and plaintiffs' counsel that SEPTA would oversee the renovations at several city-owned mass facilities. Approximately one week

later, on October 2, 1987, plaintiffs filed an amended complaint which named SEPTA as an additional defendant.

Presently before the court is defendant SEPTA's supplemental motion for summary judgment pursuant to Fed.R.Civ.P. 56. SEPTA's motion is based on the theory that the amended complaint naming SEPTA as a defendant is barred by the statute of limitations. In short, SEPTA argues that plaintiffs' claim accrued before October 2, 1985. Both sides have filed several memoranda focusing on the statute of limitations defense. After thorough consideration of the parties' arguments and the applicable standards, I have concluded that SEPTA's motion must be denied. My reasoning follows.

### II. *Relevant Facts*

Before addressing the parties' positions and the applicable law, a brief review of the events surrounding SEPTA's receipt of the federal funds and the renovation of the Margaret–Orthodox station is in order.

In October 27, 1982, SEPTA approved the Franklin Elevated Reconstruction Project ("The FERP") and placed the project on its capital budget. *See* Defendant's Exhibit J; Minutes of October 27, 1982 meeting. SEPTA concedes that the inclusion of FERP in its capital budget was predicated on SEPTA's receipt of federal funds for the project. In short, if there was no federal funding, the project would not have gone forward. At that time, all that existed was a non-specific proposal to renovate at some future date predicated upon the possible receipt of federal funds. All that SEPTA said was that major (but unknown) modifications to the Margaret–Orthodox station, in conjunction with additional work, were recommended and would be subject to federal funding. There was no further delineation of the work.

On June 13, 1983, SEPTA filed an initial grant application with the Urban Mass Transportation Administration ("UMTA"). *See* Defendants' Exhibit L, Plaintiffs' Exhibit C. SEPTA maintains that the "section on Margaret–Orthodox makes it clear that elevators will not be part of the renovation." Defendants' Memorandum in Sup-

port of the Supplemental Motion for Summary Judgment at p. 9. SEPTA's grant application for the renovation also contained an explicit assurance that SEPTA would not discriminate against individuals on the basis of their handicap in programs which received federal assistance.[1] Thus, SEPTA's Application for the Mass Transportation Capital Improvement Grant represented that SEPTA's renovation program, as the recipient of federal funds, would comply with 29 U.S.C.A. § 794 and 49 C.F.R. Part 27.

On July 8, 1983, SEPTA held a public hearing to present, and to permit public debate on, the items in the capital budget for the 1984 fiscal year. A SEPTA administrator described the renovation of the Bridge–Pratt terminal and Margaret–Orthodox station. *See* SEPTA's Exhibit N; transcript of public hearing July 7, 1983. The administrator described the renovations in the following words: "[t]he station buildings will be renovated and a new pedestrian crossover linking the two station platforms will be installed ... [P]assenger facilities such as passenger platforms, windscreens and canopies will be installed." *Id.* at 194–99. The administrator did not discuss the installation of elevators.

On September 15, 1983, the Urban Mass Transportation approved SEPTA's application for funding. *See* SEPTA's Exhibit O. The official grant incorporates by reference the project description contained in SEPTA's application for the grant. Pursuant to the grant, the federal government agreed to provide $18,267,584 or eighty percent (80%) of the funding.

On May 1, 1984, SEPTA filed an amended application with the Urban Mass Transportation Administration which sought an additional federal grant of $22,500,000. *See* SEPTA's Exhibit P. SEPTA requested this additional grant so it could begin construction on specific aspects of the FERP, including the renovation of the Margaret–Orthodox and Allegheny stations. While the amended application incorporated by reference the project description contained in SEPTA's June, 1983, application for funds to renovate the FERP, the amended application also expressly represented that SEPTA's renovation program would not discriminate against individuals on the basis of a handicap.[2] *See* Plaintiffs' Exhibit D.

On July 31, 1984, the Urban Mass Transportation Administration approved SEPTA's amended application. *See* SEPTA's Exhibit Q. This approval brought the federal financial assistance for the FERP to $52,073,695. Significantly, the terms of the grant required that the recipient not discriminate on the basis of handicaps.

> Section 118. *Nondiscrimination on the Basis of Handicap.* The recipient [in this case, SEPTA] shall insure that all fixed facility construction or alteration and all new equipment included in the project comply with the applicable regulations regarding nondiscrimination on the basis of handicap in programs and activities receiving or benefitting from federal financial assistance, set forth at 49 C.F.R. Part 27, and any amendments thereto.

Plaintiffs' Exhibit F; UMTA form 5G, revised April 1, 1983, entitled Urban Mass Transportation Agreement Part II Terms and Conditions (incorporated by reference by section 7 of the grant).

On December 7, 1984, SEPTA published an invitation to bid on the Margaret–Orthodox renovation project in *The Philadelphia Inquirer, The Philadelphia Tribune* and various construction trade journals. *See* Dillon Affidavit II, ¶ 19. On June 25, 1985,

---

1. Assurance Concerning Nondiscrimination on the Basis of Handicap in Federally–Assisted Program and Activities Receiving or Benefitting from Federal Financial assistance is herein incorporated and made part of this application by a reference to Amendment to Application for Mass Transportation Capital Improvement Grant PA–05–0019, 95 Advanced Design Buses, submitted on August 9, 1979.

Plaintiffs' Exhibit C. Surprisingly, although this assurance was contained in the June, 1983, application, SEPTA omitted the above-quoted assurance from its exhibit of the application. *Compare* SEPTA'S Exhibit L with Plaintiffs' Exhibit C.

2. The representation tracks the representation excerpted in footnote 1, *supra.*

SEPTA received the first set of bids for the renovation of Margaret–Orthodox. SEPTA rejected these bids. *Id.* at ¶ 21. Contractors submitted a second set of bids on July 26, 1985. *Id.*

On September 18, 1985, during a regularly scheduled meeting, SEPTA's Board of Directors awarded the contract for the Margaret–Orthodox renovation project to Miller & Brown/Telstock, Inc. ("Miller & Brown"). Although SEPTA awarded the contract in September, 1985, SEPTA and Miller & Brown did not sign the contract until February 24, 1986. This contract did not include a provision for the installation of elevators at Margaret–Orthodox.

The actual renovation of Margaret Orthodox station began in February, 1986. *Id.* at ¶ 23.

By January, 1988, it was apparent that the Margaret–Orthodox station (1) underwent a significant renovation and (2) such renovation did not include the installation of elevators for handicapped individuals.

Plaintiffs filed their amended complaint which joined SEPTA as a defendant on October 2, 1987.

### III. *Accrual*

The first legal issue for this court to address is what law, federal or state, controls the question of accrual. This is not a complex question.

■ Plaintiffs' complaint is grounded on federal statutes and regulations. Federal law determines when a federal claim accrues. *Antonioli v. Lehigh Coal & Navigation Co.*, 451 F.2d 1171, 1175 (3d Cir. 1971), *cert. denied*, 406 U.S. 906, 92 S.Ct. 1608, 31 L.Ed.2d 816 (1972); *Alexopulos v. San Francisco Unified School Dist.*, 817 F.2d 551, 555 (9th Cir.1987). SEPTA's reliance upon state law is misplaced.

■ Under federal law, a cause of action accrues, and the statute of limitations[3] begins to run, where a plaintiff knows or had reason to know of the injury which forms the basis of the complaint. *Alexopulos*, 817 F.2d at 555.

### IV. *What is the Injury?*

Section 504 of the Rehabilitation Act states:

No otherwise qualified individual with handicaps in the United States, as defined in section 706(8) of this title, shall, solely by reason of his handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving federal financial assistance or under any program or activity conducted by an Executive agency or by the United States Postal Service.

29 U.S.C.A. § 794 (West Supp.1988); *see also* The Civil Rights Restoration Act of 1987, Pub.L. 100–259, 102 Stat. 29, which defines the terms "program or activity." The Act affords a private right of action to handicapped persons who are excluded from federally funded programs.

■ By its own terms, section 504 seeks to prevent the exclusion from, the denial of the benefits of, or any discrimination under a program which receives federal funding. This conclusion is buttressed by the legislative history of the Act. *See* S.Rep. No. 1297, 93d Cong., 2d Sess. 38, *reprinted in* 1974 U.S.Code Cong. & Admin.News 6373, 6388. Accordingly, an otherwise qualified handicapped individual suffers an "injury" which is actionable under section 504 whenever that individual is excluded from, denied the benefits of or discriminated under a program which receives federal funding. In the present case, a wheelchair-bound individual would be injured when he or she could not gain access to a mass transportation facility which had been renovated with federal financial assistance and where the renovation violated section 504 and 49 C.F.R. §§ 27.61—27.67 (1981).

SEPTA argues that the decision by the Urban Mass Transportation Administration, in July, 1984, to approve SEPTA's grant application triggered section 504 and that plaintiff's cause of action became ripe

---

3. The applicable statute of limitations found at 42 Pa.C.S.A. § 5524 (two year limitations period).

at that time. *See* SEPTA's Brief dated July 20, 1988, at p. 4; SEPTA's Reply brief dated July 27, 1988, at p. 2.

SEPTA's argument can be interpreted one of two ways. First, SEPTA's argument that "[t]he event which triggers a claim under the Rehabilitation Act is the federal government's grant of financial assistance" could be construed as advancing the proposition that an injury cognizable under Section 504 occurs upon the approval of federal funds. I disagree. As the analysis of the language and legislative history of section 504 demonstrate, section 504 is designed to prevent the discrimination of handicapped individuals. It is the exclusion of an otherwise qualified handicapped individual, not the administrative decision to approve a funding request, which section 504 seeks to prevent. This conclusion receives additional support in cases, such as the present, where the grant application and the grant agreement solemnly proclaim that the federally funded project will comply with section 504 and/or relevant federal regulations including 49 C.F.R. §§ 27.61—27.67. Simply put, an individual is injured in violation of section 504 when that individual is discriminated against in a program which receives federal funding on the basis of his handicap.

A second way to interpret SEPTA's argument is that the injury to the plaintiffs became inevitable and, hence, "ripe" when the Urban Mass Transportation Administration approved the grant application in July, 1984.

## V. *Ripeness*

The doctrine of ripeness permits a plaintiff to assert a claim only if the plaintiff has suffered an injury or if the injury is inevitable. The basic rationale behind the doctrine:

> is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties.

*Abbott Laboratories v. Gardner,* 387 U.S. 136, 148–49, 87 S.Ct. 1507, 1515, 18 L.Ed.2d 681 (1967); *accord Pacific Gas & Elec. Co. v. State Energy Resources Conserv. & Dev. Comm'n.,* 461 U.S. 190, 200, 103 S.Ct. 1713, 1720, 75 L.Ed.2d 752 (1983). If a complaint includes a claim of a future injury which involves contingent future events that may not occur as anticipated, or indeed may not occur at all, then the injury is not inevitable and the claim is not ripe. *See Thomas v. Union Carbide Agric. Prods. Co.,* 473 U.S. 568, 581, 105 S.Ct. 3325, 3333, 87 L.Ed.2d 409 (1985); *see also Babbitt v. United Farm Workers Nat'l Union,* 442 U.S. 289, 304, 99 S.Ct. 2301, 2311, 60 L.Ed.2d 895 (1979).

SEPTA has not demonstrated that the injury to the plaintiffs was inevitable as of July, 1984. Various contingent factors could have prevented an injury. First, the representations contained in the grant applications and the conditions of the grant agreement could have been fulfilled. Second, SEPTA could have abandoned or deferred the renovation project. Third, SEPTA might not have received suitable bids for the renovations. Such contingencies show that as of July, 1984, plaintiff's injuries were not inevitable. Accordingly, SEPTA's motion for summary judgment must be denied.

## VI. *Conclusion*

Plaintiff's amended complaint is not untimely. The application of the relevant legal standards, set forth above, to the facts of the present case leads to the conclusion that an otherwise qualified handicapped person would have suffered an injury when the Margaret–Orthodox station was opened to the general public but remained inaccessible (in violation of section 504 and 49 C.F.R. §§ 27–61—27.67 (1981)) to the handicapped individual. Such injury would have occurred sometime in the first six months of 1988. Moreover, the injury of which plaintiffs complain was not inevitable until, at the earliest, SEPTA and Miller & Brown signed the renovation contract on February 24, 1986. Therefore, at this point, I need not decide the precise date on which the injury became inevitable as the claim did

not ripen before October, 1985. Similarly, the plaintiffs claim did not accrue before October 2, 1985.

An appropriate order follows.

## ORDER

AND NOW, this 26th day of September, 1988, it is hereby ordered that:

1. SEPTA's supplemental motion for summary judgment based on a statute of limitations defense is denied.

2. SEPTA's motion for summary judgment on the ground of laches is denied. Septa has not satisfied its burden of proof with respect to this defense. Second, SEPTA's noncompliance with the various assurances and conditions regarding the handicapped bars such an equitable defense. Third, the motion was made out of time.