Michael **FRAZIER**

v.

**CITY OF PHILADELPHIA, et al.**

No. 95cv1398.

United States District Court, E.D. Pennsylvania.

June 6, 1996.

Roland J. Atkins, Philadelphia, PA, for plaintiff.

Lek Domni, Jeffrey M. Scott, Asst. City Solicitors, Philadelphia, PA, for defendant.

## OPINION AND ORDER

DITTER, District Judge.

The principal question in this case is what effect naming a John Doe defendant has on the statute of limitations. A second question involves whether there is any evidence to show a city practice or policy that led to the use of unnecessary force. Now before me are two motions for summary judgment. For the reasons discussed below, I will grant both motions.

## I. FACTS

Anthony Frazier was shot by police on October 20, 1992. He died a few days later. His brother, Michael Frazier, acting as the administrator of Anthony's estate, brought this suit under 42 U.S.C. § 1983 for alleged constitutional deprivations resulting from the shooting.

On October 18, 1994, plaintiff filed a praecipe for a writ of summons in the Philadelphia Court of Common Pleas. He named as defendants the city, the police department, Officer John Doe # 1, and Officer John Doe # 2. Except that he was bringing suit in a representative capacity, plaintiff's praecipe for a writ of summons contained no facts from which a person could ascertain the basis of the lawsuit. The John Doe summonses were eventually returned to plaintiff with a notation indicating that the city solicitor

could not accept service for the unidentified officers.

On October 28, 1994, the city filed a praecipe and rule to file a complaint within twenty days or suffer judgement of *non pros.* Plaintiff filed a complaint in the Court of Common Pleas on February 22, 1995, approximately 17 weeks later. While the caption still named only the city, the police department, and the two John Doe defendants, Detectives Fredric McQuiggan and Paul Cassidy were referred to by name and what they allegedly did described in the body of the complaint.

On March 9, 1995, the city and the police department removed the case to this court. On May 22, 1995, I held a pre-trial conference during which the parties agreed that on or before May 26, 1995, plaintiff's counsel would send a stipulation to defendants' counsel so that the complaint could be amended to provide the names of the two officers referred to as John Doe #1 and John Doe #2. The legal significance of this stipulation was not an issue at the time.

Service of the summons and complaint appears to have been made on the detectives on October 6, 1995. On January 24, 1996, I denied Detectives McQuiggan's and Cassidy's motion to dismiss pursuant to Fed.R.Civ.Pro. 12(b)(5).

Detectives McQuiggan and Cassidy maintain that judgment should be entered in their favor because plaintiff's claims against them are time-barred. The city[1] proffers various arguments why judgment should be entered in its favor.

## II. DISCUSSION

### A. *The Statute of Limitations Bars This Action Against Detectives McQuiggan and Cassidy*

Plaintiff had until October 20, 1994, to commence this action.[2] Where a case originates in state court, as this case did, but is later removed to federal court, as this case was, the state rule controls the question of commencement. *See Winkels v. George A. Hormel & Co.*, 874 F.2d 567, 570 (8th Cir. 1989) (removal pursuant to 28 U.S.C. §§ 1331 and 1441).

Under Pennsylvania law, filing a praecipe for a writ of summons is sufficient to commence a civil action. Pa.R.Civ.Pro. § 1007. In this case, however, the praecipe did not actually name Detectives McQuiggan and Cassidy but instead relied upon John Doe designations.[3] Thus, the first question is whether under Pennsylvania law, the filing of a praecipe for a writ of summons that names John Doe defendants effectively commences an action against the persons underlying the fictitious names. I conclude that it does not.

Although no Pennsylvania court has specifically addressed this question, in *Cathcart v. Keene Indus. Insulation*, 324 Pa.Su-

1. All references to the city include the police department. Although defendants have not raised the question of whether the police department and city are separate entities, on numerous occasions they have been held to be the same.

2. In § 1983 actions, federal courts apply the statute of limitations governing state actions for personal injuries. *Wilson v. Garcia*, 471 U.S. 261, 276–80, 105 S.Ct. 1938, 1947–49, 85 L.Ed.2d 254 (1985). Pennsylvania has a two-year limitations period for personal injury actions. 42 Pa.C.S.A. § 5524(7). The statute of limitations begins to run from the time that the cause of action accrues. Accrual of a federal cause of action, like one brought under § 1983, is governed by federal law. *Eastern Paralyzed Veterans v. Sykes*, 697 F.Supp. 854, 857 (E.D.Pa. 1988) (Newcomer, J.). Under federal law, a § 1983 action accrues when a plaintiff knows or has reason to know of the injury forming the basis of his complaint. In this case, plaintiff knew of his injury on October 20, 1992, and, thus, he had two years from that time to commence this action. Commencing an action tolls the statute of limitations.

3. There normally is no authority to proceed against unknown persons in the absence of a statute or rule expressly permitting the practice. 59 Am.Jur.2d *Parties* § 16; 67A C.J.S. *Parties* § 115; Joel E. Smith, Annotation, *Relation Back of Amended Pleading Substituting True Name of Defendant For Fictitious Name Used in Earlier Pleadings So as to Avoid Bar of Limitations*, 85 A.L.R.3d 130. The Third Circuit, however, although not sanctioning the practice, has apparently accepted it in civil rights suits without significant discussion. *See Baker v. Monroe Township*, 50 F.3d 1186 (3d Cir.1995). Pennsylvania has not authorized suits against unknown defendants, Note, 46 Iowa L.Rev. 773, 776 n. 15 (1961), but as defendants have not raised this issue in their motion, I need not address it.

per. 123, 471 A.2d 493, 501 (1984), the superior court held that an injured party must determine within the statutory period the identity of the party who caused his injuries. The *Cathcart* court, therefore, implicitly rejected the use of John Doe designations as a way to toll the statute of limitations. Clearly, where a plaintiff files a praecipe for a writ of summons two days before the statute of limitations is about to expire, lists some of the defendants' names as "John Doe," and does not amend the praecipe within 48 hours, he has failed timely to determine the defendants' identity. This conclusion is consistent with *Marzella v. King*, 256 Pa.Super. 179, 389 A.2d 659, 662 (1978), where the superior court held that a summons that fails to designate a "legal, competent entity" does not effectively commence a civil action. John Doe designations in a praecipe obviously do not designate a legal, competent entity and, therefore, such designations fail to commence an action. Therefore, I conclude that the John Doe designations in plaintiff's praecipe for a writ of summons did not effectively commence an action against Detectives McQuiggan and Cassidy and, therefore, all claims against the detectives arising out of the shooting on October 20, 1992, were time-barred as of October 20, 1994.[4]

This conclusion does not, however, end the inquiry. Under some circumstances, a party can amend his pleading after the statute of limitations has run and the amendment will relate back in time to an earlier filing. A plaintiff who amends his complaint by adding the name of a new defendant may therefore pursue an action against a defendant provided the amendment relates back to a time before the limitations period expired. *See*

*Varlack v. SWC Caribbean, Inc.*, 550 F.2d 171, 174 (3d Cir.1977).

■ Although the question of commencement is determined by state law, once a case is in federal court, federal law controls whether an amendment relates back. *Britt v. Arvanitis*, 590 F.2d 57, 61 (3d Cir.1978). Federal Rule of Civil Procedure 15(c) provides that an "amendment of a pleading relates back to the date of the original pleading" when each of the following conditions are met: (1) the claim arises out of the conduct set out in the original pleading; (2) the party to be brought in received such notice that it will not be prejudiced in maintaining its defense; (3) the party should have known that, but for a mistake of identity, the original action would have been brought against it; and (4) the second and third criteria are fulfilled within the period of time provided for in rule 4(m).[5]

If Rule 15(c) applies, an amendment relates back "to the date of the original pleading." Plaintiff commenced this action by filing a praecipe for a writ of summons on October 18, 1994. He then filed a complaint on February 22, 1995. The first question to answer is whether the writ of summons or complaint was "the original pleading" within the meaning of Rule 15.

■ This case enjoys the dubious distinction of containing an unprecedented number of procedural anomalies. However, because state law controls the pre-removal aspects of the case, if the amendments relate back in time, they relate back to the date of the writ of summons because that was the original filing permitted under state law.[6]

---

4. Sound policy considerations support this conclusion. First, allowing John Doe designations to toll the limitations period for claims against unidentified defendants sanctions *ad hoc* amendments to carefully reasoned legislative determinations about the appropriate time within which to bring suit. Second, a rule that excuses a plaintiff's failure to identify the defendant within the statute of limitations encourages dilatory conduct; plaintiffs do not have incentive to identify the proper defendant within the statutory period. Finally, a minimal pre-filing investigation is consistent with existing federal rules. *See* Fed.R.Civ.P. 11.

5. The conceptual difference between relation-back and when the John Doe designation actually commences an action is that with commencement, the party that the John Doe designation represents has always been a part of the lawsuit, while with relation-back, the filings against the new party are treated as if filed on the date of the original pleading.

6. Although I find that the writ of summons was the original pleading to which the amendments might relate back, plaintiff would fare no better were the complaint the original pleading. *See Gervel v. L & J Talent*, 805 F.Supp. 308, 309 (E.D.Pa.1992) (Troutman, J.) (holding writ of

■ Next I must apply Rule 15(c) to determine whether the amendments relate back to the time of the writ of summons. Relation back is only proper where Rule 15(c)'s four criteria are satisfied. One of the criteria is that the party to be brought in by amendment knew or should have known that, *but for a mistake concerning the identity of the proper party,* the action would have been brought against the party. The First, Second, Fourth, Sixth, Seventh, and Tenth Circuits have held that designating a "John Doe" in an original pleading is not a "mistake concerning the identity" within the meaning of Rule 15 and, therefore, an amendment containing a party's true name cannot relate back to the original pleading which only identified the party with a fictitious name. *See Wilson v. United States,* 23 F.3d 559, 563 (1st Cir.1994); *Barrow v. Wethersfield Police Dept.,* 66 F.3d 466, 468 (2nd Cir.1995); *Western Contracting Corp. v. Bechtel Corp.,* 885 F.2d 1196, 1201 (4th Cir.1989); *Cox v. Treadway,* 75 F.3d 230, 240 (6th Cir.1996); *Worthington v. Wilson,* 8 F.3d 1253, 1256 (7th Cir.1993); *Watson v. Unipress, Inc.,* 733 F.2d 1386 (10th Cir.1984).

In addition, relation back would not be proper here because there was no way that McQuiggan and Cassidy could have known within the relevant time period that their being brought into the suit was a distinct possibility. The summons failed to name the police officers, give any of the underlying facts, or even give the date of the shooting. Thus, this case is unlike *Heinly v. Queen,* 146 F.R.D. 102, 107 (E.D.Pa.1993), where Judge Van Antwerpen found that because a deputy attorney general, who represented some police officers, had constructive knowledge from the facts in the complaint that the suit might involve other police officers, this knowledge was imputed to the other officers. Here, the city solicitor did not possess any knowledge about the individual officers that could in turn be imputed to detectives McQuiggan and Cassidy.[7]

### B. No Evidence of Custom or Practice to Trigger Municipal Liability

Plaintiff alleged in his complaint that the city maintained a policy of shooting African American citizens.[8] In his brief opposing the

---

summons not "initial pleading" for purposes of removal jurisdiction). If that were the case and relation back were proper, then the claims against McQuiggan and Cassidy would be time-barred. The time limit for plaintiff's claims against the detectives expired on October 20, 1994. Thus, unless the limitations period was tolled as to these defendants by the summons filed on October 18, 1994, even if the amendments properly relate back to the complaint filed on February 22, 1995, the claims against the detectives are time-barred. Federal law controls the question of relation-back and also controls the subsidiary question of whether the John Doe designations in the summons tolled the statute of limitations. It is well established that John Doe pleadings cannot be used to circumvent statutes of limitations. *See, e.g., Cox v. Treadway,* 75 F.3d 230, 240 (6th Cir.1996); *Barrow v. Wethersfield Police Dept.,* 66 F.3d 466, 468 (2nd Cir.1995). Therefore, the John Doe designations in the summons did not toll the statute of limitations as to McQuiggan and Cassidy. It must follow then that if the addition of the detectives' names relates back to when the complaint was filed on February 22, 1995, plaintiff's claims against the detectives had already expired. The claims having already expired, and the John Doe designations having failed to commence an action under Pennsylvania law, plaintiff's claims against the detectives must now be time-barred. Moreover, under *Hardin v. Straub,* 490 U.S. 536, 541, 109

S.Ct. 1998, 2001, 104 L.Ed.2d 582 (1989), federal courts are bound to follow a state's tolling provisions in § 1983 actions so long as those provisions are not inconsistent with federal law. As federal law clearly prohibits the use of fictitious names to circumvent statute of limitations, state tolling provisions that apply to John Doe complaints are inconsistent with federal law and, therefore, do not bind federal courts. Even if Pennsylvania law were to control, as discussed in the preceding section, designating fictitious names in a summons would not commence an action against the underlying parties and does not, therefore, toll the Pennsylvania statute of limitations.

7. Not only did the city solicitor lack any knowledge that could be imputed to the officers, at that point the city solicitor did not represent them. It is one thing to impute an attorney's knowledge to the client, but quite a different thing to impute an attorney's knowledge to someone who later becomes a client. If that is indeed the law, no one will be safely able to engage an attorney without first asking, "what do you know from whatever source that might be imputed to me?"

8. In his complaint, plaintiff alleges that the "Philadelphia Police department has adopted and maintained for many years a recognized and accepted policy, custom, and practice toward

city's motion for summary judgment, plaintiff also contends that the city failed adequately to train its police officers about the appropriate use of force and that this failure to train amounted to a municipal policy. He also claims that the city's policy of handcuffing all arrestees' hands behind their backs amounted to a constitutional deprivation.

■■■ A municipality can only be sued under § 1983 where action pursuant to a municipal policy or custom causes a constitutional tort. *Monell v. Department of Social Servs.*, 436 U.S. 658, 694, 98 S.Ct. 2018, 2037, 56 L.Ed.2d 611 (1978). The inadequacy of police training may serve as the basis for municipal liability under § 1983 if the failure to train amounts to deliberate indifference to the rights of persons with whom the police come in contact. To meet the deliberate indifference standard, the failure to train must reflect a deliberate or conscious choice made by city policymakers. *City of Canton v. Harris*, 489 U.S. 378, 389, 109 S.Ct. 1197, 1205, 103 L.Ed.2d 412 (1989).

■■■ To support his claims that the city maintained a policy or custom to shoot African Americans, plaintiff cites statistical data about how frequently the police internal affairs department has investigated Philadelphia police officers for discharging weapons, how frequently these discharges violated police department policy, and, when the discharge violated police policy, how frequently that violation related to the department's policy on the appropriate use of deadly force. The statistical data does not, however, specify the racial composition of the citizens involved in these discharge incidents. Thus, the statistics are irrelevant to the question of whether the city maintained a policy of

shooting African Americans. Moreover, plaintiff has produced no other evidence indicating that police are more likely to use deadly force on African Americans than on Caucasians.[9]

Plaintiff relies on this same statistical data to support his failure-to-train claim. However, he has not proffered any evidence indicating that a city policymaker acted with deliberate indifference to the question of police use of deadly force. In fact, the record shows that not only has the police department maintained strict policies regulating when force is appropriately used, but it has also enforced those policies through internal investigations. Based on this fact, I find that plaintiff has failed to proffer sufficient evidence so that a factfinder could reasonably conclude that the city of Philadelphia maintained a policy of shooting African Americans, or that a city policymaker made a deliberate choice not to train its officers about the appropriate use of force.

■■■ Plaintiff next contends that the city is liable under § 1983 because it maintained a policy requiring all arrestees to be handcuffed with their hands behind their backs[10] and that when, pursuant to this policy, Detectives McQuiggan and Cassidy handcuffed Anthony Frazier's hands behind his back after shooting and arresting him, the handcuffs ultimately delayed medical treatment. In *Collins v. City of Harker Heights*, 503 U.S. 115, 124–25, 112 S.Ct. 1061, 1068, 117 L.Ed.2d 261 (1992) the Supreme Court emphasized that a plaintiff must establish that a city's policy caused a constitutional deprivation in order for there to be municipal liability under § 1983. The Fourth Amendment prohibits *unreasonable* seizures. If the po-

persons of the African American race of systematically shooting them, although they are only suspected of committing crimes and subjecting them to the same type of treatment to which the decedent was subjected, which policy constitutes the use of excessive force."

**9.** Plaintiff also contends that because the city routinely destroyed shooting investigation documents after five years, it would be impossible to show a pattern evidencing a policy or custom. I disagree with plaintiff's contention. Moreover, plaintiff has not supplied *any* documentary evidence to show a policy of shooting African Amer-

icans. He has not, for instance, proffered documents from the past five-years.

**10.** Plaintiff has offered the testimony of Detective McQuiggan to support his claim that police policy was to handcuff all arrestees with their hands behind their backs. Detective McQuiggan testified that handcuffs are always placed on the back unless "there is a physical limitation. For example, if the guy had a broken arm." (McQuiggan Dep. at 70). Thus, plaintiff's unqualified claim that *all* arrestees have their hands cuffed behind their backs appears to be a serious overstatement.

lice department had a policy requiring all arrestees to be handcuffed with their hands behind their back (which on this record does not appear to be the case), and that policy was reasonable, then there was no Fourth Amendment deprivation in the first place and accordingly no basis for liability under § 1983.

In *McPherson v. Auger,* Chief Judge Carter held that a town's policy of handcuffing all arrestees, regardless of the threat that they posed, was not unreasonable under the Fourth Amendment. 842 F.Supp. 25, 30 (D.Me.1994). Judge Carter's holding is consistent with the Supreme Court's decision in *Graham v. Connor* where the Court found that the right to make an arrest carries with it the right to use some degree of physical coercion. 490 U.S. 386, 396, 109 S.Ct. 1865, 1872, 104 L.Ed.2d 443 (1989). It is also in line with the Third Circuit's holding in *Baker v. Monroe Township,* 50 F.3d 1186, 1193 (3d Cir.1995), that the use of handcuffs must be justified by the circumstances. Certainly arrest is one of the circumstances justifying the use of handcuffs. Based on these considerations and the fact that the police department's policy was apparently qualified so that arrestees with physical limitations would not have their hands cuffed behind their backs, I conclude the police department's policy was reasonable and thus does not constitute a Fourth Amendment deprivation.[11]

■ Plaintiff has also brought a claim under 42 U.S.C. § 1985(3) in which he alleges that the detectives conspired to deprive Anthony Frazier of his constitutional rights. Plaintiff has not, however, alleged that this deprivation resulted from the execution of a city policy or custom. As with cases brought under 42 U.S.C. § 1983, § 1985(3) liability only exists where the constitutional injury results from a municipal policy or custom. *Di Maggio v. O'Brien,* 497 F.Supp. 870, 874 (E.D.Pa.1980) (Lord III, C.J.). As plaintiff has failed to make such an allegation, this claim also fails.

11. Moreover, the allegation here is that a delay in removing plaintiff's handcuffs interfered with his medical treatment. The city policy only provided that most arrestees be handcuffed, but did not require that the handcuffs remain in place

Finally, plaintiff concedes that judgment should be entered in defendants' favor on his state law claims; counts II, III, and IV.

Appropriate orders follow.

## ORDER

AND NOW, this 6th day of June, 1996, defendants McQuiggan's and Cassidy's motion to dismiss or for summary judgment is hereby GRANTED and summary judgment is entered in their favor and against plaintiff.

## ORDER

AND NOW, this 6th day of June, 1996, defendant City Philadelphia's motion for summary judgment is hereby GRANTED and judgment is entered in its favor and against plaintiff.

when the arrestee was receiving medical attention. Even assuming that plaintiff suffered some constitutional deprivation, it was not caused by the city's policy.