**ESTATE OF Richard BURKE, Plaintiff,**

v.

**MAHANOY CITY, Mahanoy City Police Department, Chief John Lewis, in his official capacity, Officer John Kaczmarczyk, Officer William McGinn, Officer Jane Doe, et al., Defendants.**

No. 97–CV–7277.

United States District Court, E.D. Pennsylvania.

March 3, 1999.

---

Stephen T. Carpenito, Ashland, PA, for plaintiff.

Robert G. Hanna, Jr., Marshall, Dennehey, Warner, Coleman & Goggin, Harrisburg, PA, for Mahanoy City, Mahanoy City Police Dept., John Lewis, John Kaczmarczyk, William McGinn, Officer Jane Doe.

James R. Scallion, William Mc Govern, Mylotte, David & Fitzpatrick, Hazleton, PA, for Jack's Locker Room, John C. Kaczmarczyk.

Joseph J. Jones, Jr., Joseph A. Mc Kenna, Williamson, Friedberg and Jones, Pottsville, PA, for Fowler's Tavern, Michael T. Fowler.

Mary Ann Hanna, Bennett, Bricklin & Saltzburg, Philadelphia, PA, for Sheldon Buscavage.

## OPINION AND ORDER

VAN ANTWERPEN, District Judge.

Plaintiff, the estate of Richard Burke ("Plaintiff"), brought this 42 U.S.C. § 1983 civil action against, *inter alia*, Defendants Mahanoy City, Mahanoy City Police Department, Chief John Lewis, Officer John Kaczmarczyk ("Kaczmarczyk") and Officer William McGinn ("McGinn") [collectively referred to as "Defendants"]. Plaintiff also alleges a state claim of wrongful death against some of the Defendants. Presently before this court is Defendants' Motion for Summary Judgment. For the reasons stated below, Defendants' Motion for Summary Judgment is GRANTED in its entirety.

## I. FACTUAL BACKGROUND

On the evening of December 1, 1995, a "drinking party" was held by Jessica Didgen and Holly Rhoades at their apartment located at 126 E. Centre Street, Mahanoy City, Pennsylvania. *See* Defs.' Br. at 2.[1]

1. Defendants' Memorandum of Law in Support of their Motion for Summary Judgment filed on December 21, 1998, is hereinafter referred to as "Defs.' Br. at ___."

Among those attending the party was the decedent, Richard Burke ("Burke"). *See* Pl.'s Br. at 1.[2]

Prior to attending the party, and at various times during the night of December 1st, Sheldon Buscavage ("Buscavage") and William Beninsky ("Beninsky") consumed several beers at local drinking establishments. *See id.* at 3, 6. They first arrived at the party sometime around 10:30 p.m. *See* Defs.' Br. at 2. Shortly thereafter they left the party and later returned between 12:00 a.m. and 1:00 a.m. on the morning of December 2nd. *See id.* During one or both of Buscavage's and Beninsky's visits to the party, they consumed a significant amount of alcohol and also ingested cocaine. *See* Defs.' Br. at 2, 3; Pl.'s Br. at 4.

Earlier that evening, it is alleged that a fight broke out at the party. *See* Pl.'s Br. at 4. This fight eventually carried out onto the street, at which time McGinn and Kaczmarczyk were summoned to the scene. *See id.* at 4–5. No citations were issued and the situation was diffused. *See id.* at 6.

At approximately 2:45 a.m. on December 2nd, Jessica Didgen reportedly requested the assistance of two of her friends, Frank Styka ("Styka") and Chuckie Schmerfeld ("Schmerfeld"), so that they could remove Buscavage and Beninsky from the party. *See* Defs.' Br. at 3. A fracas ensued as a result of their forced departure from the party. *See* Pl.'s Br. at 7. This fight began inside the apartment and, like the earlier disturbance, carried out onto the street. *See id.* There is disagreement over whether McGinn and Kaczmarczyk witnessed the above incident from their parked vehicle across the street. The officers deny that they saw the fight, while

2. Plaintiff's Brief in Opposition to Defendants' Motion for Summary Judgment filed on February 1, 1999, is hereinafter referred to as: "Pl.'s Br. at ___."

witnesses assert that they did.[3] *See id.* at 7–8. The officers allege that they were sitting in their vehicle across the street from the party at approximately 2:20 a.m., at which time they witnessed neither a fight nor a crowd of people. *See id.* at 8. Witnesses contradict this and allege that the police observed the entire incident and did not leave the scene until afterward. *See id.*

Shortly after the fight, Buscavage and Beninsky encountered McGinn and Kaczmarczyk.[4] *See* Defs.' Br. at 3. Beninsky approached the officers, and he proceeded to inform them that he and Buscavage had been assaulted and that the police should go and arrest the guys who did it. *See id.* It is undisputed that Beninsky was visibly intoxicated when he approached the officers. *See id.* at 5; Pl.'s Br. at 8. The parties disagree, however, as to whether Beninsky was "calm" and "very respectful" toward the officers, *see* Defs.' Br. at 5, or whether he was angry and irate. *See* Pl.'s Br. at 9. Specifically, Plaintiff claims that Beninsky became angry when the police informed him that they could not do anything about his complaint, stating: "If you don't do your job, I'll take care of it myself." *See id.* Defendants maintain that, upon being informed of the proper procedure for filing a complaint, Beninsky simply thanked the officers and went on his way. *See* Defs.' Br. at 4.

Witnesses also report that, after the fight, either Buscavage or Beninsky stated: "I'm going to kill ya's . . . blow your f'ing heads off."[5] *See* Defs.' Br. at 3. According to Holly Rhoades, who witnessed the incident and heard the above remark, the statement was not taken as a threat because the declarant was simply drunk and angry. *See id.* at 3. Plaintiff

claims that McGinn and Kaczmarczyk were present in a parked car across the street when one of the young men yelled this, but the officers maintain that they were not present for the fight. *See* Pl.'s Br. at 7–9. At approximately 3:00 a.m. on December 2nd, Beninsky returned to the party with a loaded gun, at which time he proceeded to shoot and kill Burke and injure several others. *See* Defs.' Br. at 2.

Plaintiff asserts that "Mahanoy City is a drinking town where it is common to see public drinking, fighting, public drunkenness, underage drinking, disorderly conduct, loitering and constant violation of curfew laws, open container laws, disorderly conduct laws, fighting, etc." *See* Pl.'s Br. at 2. Moreover, Plaintiff has alleged that is was common for the Mahanoy City Police Department to turn a blind eye toward these types of behaviors and offenses. *See id.* at 27–34.

## II. STANDARD OF REVIEW

The court shall render summary judgment only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). An issue is "genuine" only if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) ("Anderson I"). A factual dispute is "material" only if it might affect the outcome of the suit under governing law. *See id.* at 248, 106 S.Ct. 2505. All inferences must be drawn and all doubts resolved in

---

**3.** Among these witnesses is Buscavage, who claims to have seen the police cruiser drive by as he was lying on the ground during the fight. *See* Pl.'s Br. at 8.

**4.** According to Plaintiff, Beninsky approached the officers after the fight as they sat in their cruiser across the street. *See* Pl.'s Br. at 8. According to Defendants, however, Beninsky

and Buscavage encountered the officers sometime after Beninsky and Buscavage departed the scene. *See* Defs.' Br. at 3.

**5.** Witnesses disagree at to whether Buscavage or Beninsky was the declarant of the threat. *See* Defs.' Br. at 3.

favor of the non-moving party. *See United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962); *Gans v. Mundy*, 762 F.2d 338, 341 (3d Cir.1985).

On motion for summary judgment, the moving party bears the initial burden of identifying those portions of the record that it believes demonstrates the absence of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). To defeat summary judgment, the non-moving party must respond with facts of record that contradict the facts identified by the movant and may not rest on mere denials. *See id.* at 321 n. 3, 106 S.Ct. 2548 (quoting Fed.R.Civ.P. 56(e)); *see also First Nat'l Bank of Pa. v. Lincoln Nat'l Life Ins. Co.*, 824 F.2d 277, 282 (3d Cir.1987). The non-moving party must demonstrate the existence of evidence which would support a jury finding in its favor. *See Anderson I*, 477 U.S. at 249, 106 S.Ct. 2505.

### III. DISCUSSION

In this Section 1983 action, Plaintiff has brought claims against the individual police officers, and also against Mahanoy City, the Mahanoy City Police Department and Chief John Lewis. First, Plaintiff alleges that McGinn and Kaczmarczyk violated his Fourteenth Amendment right to substantive due process (Count IV). Pl.'s Compl. at ¶¶ 123–133. Plaintiff also asserts that Defendants Mahanoy City, the Mahanoy City Police Department and Chief John Lewis violated his right to due process through their: (1) custom, policy and practice of failing to address Mahanoy City's problems of, *inter alia*, underage drinking, loitering and fighting; and (2) inadequate supervision of the city's police officers (Counts I & II). *Id.* at ¶¶ 91–117. Finally, Plaintiff alleges a state claim for wrongful death against Defendants Mahanoy City, the Mahanoy City Police Depart-

ment and Chief John Lewis (Count III).[6] *Id.* at ¶¶ 118–122.

### A. Substantive Due Process Claim Against Individual Officers

McGinn and Kaczmarczyk assert that Plaintiff has not suffered a violation of his right to substantive due process. They further argue that, even if the court finds a constitutional violation, they are not liable because of qualified immunity. We will examine each of these claims in turn.

#### 1. Claims Under 42 U.S.C. § 1983

■ First we turn to the individual liability of McGinn and Kaczmarczyk under § 1983. The court's analysis begins with a discussion of the requirements for establishing a constitutional claim under 42 U.S.C. § 1983. Section 1983 reads, in pertinent part, as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

Section 1983 does not, in and of itself, create substantive rights. Instead, "it provides only remedies for deprivations of rights established elsewhere in the Constitution or federal laws." *Kneipp v. Tedder*, 95 F.3d 1199, 1204 (3d Cir.1996). A plaintiff seeking to establish a claim under Section 1983 "must demonstrate a violation of a right secured by the Constitution and the laws of the United States [and] that the alleged deprivation was committed by a person acting under color of state law." *Id.* (quoting *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1141 (3d Cir.1995)). In the

---

6. At the onset, we reject this claim because it is barred under the Pennsylvania Governmental Immunity Statute, *see* 42 Pa.C.S.A. § 8541.

We therefore grant Defendants summary judgment on this claim (Count III).

case at bar, Plaintiff has alleged that Defendants violated Burke's right to substantive due process as guaranteed by the Fourteenth Amendment by failing to protect him when the facts of this case created a duty on their part to do so.

### a. Substantive Due Process Claim and the "State–Created Danger" Theory

Plaintiff's substantive due process claim against McGinn and Kaczmarczyk is grounded on the fact that the Fourteenth Amendment protects citizens from the deprivation of life by the State without due process of law. *See* U.S. Const. amend. XIV. Regarding the state-created danger theory, Plaintiff argues that one may state a claim for a civil rights violation if he "allege[s] state action that creates[,] or substantially contributes to the creation of[,][a] danger or renders citizens more vulnerable to [a] danger than they otherwise would have been." *See* Pl.'s Br. at 11 (quoting *Reed v. Gardner,* 986 F.2d 1122, 1126 (7th Cir.1993)). Specifically, Plaintiff argues that the officers should be held liable under this theory because they knew the following:

(1) that the area in question was a "hot spot" for drinking, loitering, fighting and other criminal activity;

(2) that the excessive use of alcohol was a problem in Mahanoy City;

(3) that there was a party taking place at 126 E. Centre Street, and that there was drinking and fighting occurring as a result of said party; and

(4) that those persons inside the apartment at approximately 3:00 a.m. on December 2nd were in danger because the officers heard Beninsky state that he was going to return and blow their heads off.

Therefore, Plaintiff argues that the officers' knowledge of the above events in fact created the dangerous situation, and that they should be held liable for Burke's death because they failed to take appropriate action.

The Due Process Clause of the Fourteenth Amendment provides that "[n]o State shall ... deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV. In *DeShaney v. Winnebago County Dep't of Social Servs.,* 489 U.S. 189, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989), the Supreme Court addressed the issue of whether the Due Process Clause imposes upon the State an affirmative duty to protect an individual against private violence.[7] The Court noted that "nothing in the language of the Due Process Clause itself requires the State to protect the life, liberty, and property of its citizens against invasion by private actors." *Id.* at 195, 109 S.Ct. 998. The Court added that "[i]ts purpose was to protect the people from the State, not to ensure that the State protected them from each other." *Id.* at 196, 109 S.Ct. 998. According to the Third Circuit, "*DeShaney* ... stands for the harsh proposition that even though state officials know that a person is in imminent danger of harm from a third party, the fourteenth amendment imposes upon those state officials no obligation to prevent that harm." *Horton v. Flenory,* 889 F.2d 454, 457 (3d Cir.1989).

The Court in *DeShaney* did, however, recognize "that in certain limited circumstances the Constitution imposes upon the State affirmative duties of care and protection with respect to particular individuals." 489 U.S. at 198, 109 S.Ct. 998; *see also Robinson v. California,* 370 U.S. 660, 82

---

7. *DeShaney* was a Section 1983 case brought by a mother on behalf of her deceased child, who had been beaten to death by his father. In that case, social workers and local officials who had received complaints that the child was being abused by his father failed to take steps to remove the child from the father's custody. The Court, while holding that the state officials were not liable, left the door open regarding whether one could commit a constitutional violation despite the absence of a special relationship when it stated: "While the State may have been aware of the dangers that [the child] faced in the free world, it played no part in their creation, nor did it do anything to render him any more vulnerable to them." 489 U.S. at 201, 109 S.Ct. 998.

S.Ct. 1417, 8 L.Ed.2d 758 (1962) (recognizing that the Eighth Amendment's prohibition against cruel and unusual punishment, made applicable to the States through the Fourteenth Amendment's Due Process Clause, requires the State to provide adequate medical care to incarcerated prisoners); *Youngberg v. Romeo*, 457 U.S. 307, 102 S.Ct. 2452, 73 L.Ed.2d 28 (1982) (holding that the substantive component of the Fourteenth Amendment's Due Process Clause requires the State to provide involuntarily-committed mental patients with such services as are necessary to ensure their "reasonable safety" from themselves and others); *Revere v. Massachusetts General Hosp.*, 463 U.S. 239, 103 S.Ct. 2979, 77 L.Ed.2d 605 (1983) (holding that the Due Process Clause requires the responsible government or governmental agency to provide medical care to suspects in police custody who have been injured while being apprehended by police). The Court in *DeShaney* explained:

> In the substantive due process analysis, it is the State's affirmative act of restraining the individual's freedom to act on his own behalf—through incarceration, institutionalization, or other similar restraint of personal liberty—which is the "deprivation of liberty" triggering the protections of the Due Process Clause, not its failure to act to protect his liberty interests against harms inflicted by other means.

489 U.S. at 200, 109 S.Ct. 998.

The holdings in the above cases were responsible for creating what is commonly referred to today as the "state-created danger" theory. The essence of this rule is "that when the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being." *Id.* at 199–200, 109 S.Ct. 998. The clear rationale behind the state-created danger theory is that "when the State by the affirmative exercise of its power so restrains an individual's liberty that it ren-

ders him unable to care for himself, and at the same time fails to provide for his basic human needs—e.g., food, clothing, shelter, medical care, and reasonable safety—it transgresses the substantive limits on state action set by the Eighth Amendment and the Due Process Clause". *Id.* at 200, 109 S.Ct. 998. Restated, "[t]he affirmative duty to protect arises not from the State's knowledge of the individual's predicament or from its expressions of intent to help him, but from the limitation which it has imposed on his freedom to act on his own behalf." *Id.*

The Third Circuit has also visited the state-created danger theory. *See Morse v. Lower Merion School Dist.*, 132 F.3d 902 (3d Cir.1997) (finding as a matter of law that the defendants, a school district and a day care operator that leased a classroom from the district, were not liable to the survivors of a day care teacher who was killed by a third party when the district had unlocked the back entrance to the school to facilitate the work of contractors); *Kneipp*, 95 F.3d at 1199 (holding that summary judgment was improper and a triable issue of fact was presented under state-created danger theory where police officers permitted an intoxicated pedestrian to walk home on a cold night, resulting in that person falling down an embankment and suffering brain damage); *Mark*, 51 F.3d at 1137 (finding that there existed a triable issue of fact regarding whether a police officer's act of stranding the female passenger of a drunk driver in a high crime area at 2:30 a.m., resulting in her being raped by a stranger, constituted affirmatively placing her in a position of danger); *D.R. by L.R. v. Middle Bucks Area Vocational Technical School*, 972 F.2d 1364 (3d Cir.1992) (en banc) (holding that the defendant school officials did not create the students' danger or increase their risk of harm where female students were physically, verbally and sexually molested by male students in a unisex bathroom and in a darkroom); and *Brown v. Grabowski*, 922 F.2d 1097 (3d Cir.1990)

(finding that the police were not liable for a woman's death where they failed to act in response to reports by the woman's family regarding repeated threats and sexual assaults by the woman's live-in boyfriend).

The common element which distinguishes *Morse, Middle Bucks* and *Brown* from the other two cases is that the state officials did not perform some overt, affirmative act which created or worsened the dangerous conditions that eventually led to injury or death. In *Brown,* the court noted that the plaintiff demonstrated only what the police failed to do. 922 F.2d at 1116. The plaintiff failed to offer any evidence that the officers affirmatively acted to create or exacerbate the danger to the victim. *See id.* The court in *Middle Bucks* added that "[t]he acts or omissions of the school defendants . . . did not rise to the level of affirmative action required to impose liability under the state-created danger theory." *Kneipp,* 95 F.3d at 1207. This court determines that the facts in the case at bar more closely resemble those in *Morse, Middle Bucks* and *Brown* because the state officials did not act affirmatively or in such a way as to enhance the risk of danger to the victim.

In *Mark,* the Third Circuit "found that cases predicating constitutional liability on a state-created danger theory have four common elements:

(1) the harm ultimately caused was foreseeable and fairly direct;

(2) the state actor acted in willful disregard for the safety of the plaintiff;

(3) there existed some relationship between the state and the plaintiff;

(4) the state actors used their authority to create an opportunity that otherwise would not have existed for the third party's crime to occur.

51 F.3d at 1152. Moreover, the court noted that "[t]he cases where the state-creat-

ed danger theory was applied were based on discrete, grossly reckless acts committed by the state or state actors using their peculiar positions as state actors, leaving a discrete plaintiff vulnerable to foreseeable injury." *Id.* at 1153.

We will now apply the four elements set forth in *Mark* to the facts of this case in order to conclusively determine whether the state-created danger theory is applicable.[8] First, Burke's death must have been a foreseeable and reasonably direct result of the officers' conduct. We will assume for purposes of deciding this motion that the drinking party was located in a section of the town where it was commonplace to witness public drunkenness, loitering and fighting, and also that McGinn and Kaczmarczyk heard the declarant make the threat. Despite these assumptions, the court still finds it difficult to view Burke's death as the foreseeable and direct result of the officers' failure to warn all of the individuals at the party because vacuous threats by angry and intoxicated young adults are far from uncommon. Nevertheless, the court will pass on this relatively close call because Plaintiff clearly fails on the other three *Mark* factors.

With regard to whether the officers' conduct amounted to a willful disregard for Plaintiff's safety, the court finds that Plaintiff has failed to produce sufficient evidence to support such an assertion. "Willful" is defined as "deliberate," "intentional," "purposeful," and "[i]ntending the result which actually comes to pass." Black's Law Dictionary 1599 (6th ed.1990). Assuming the complete veracity of Plaintiff's factual depiction of the evening in question (i.e., that the officers watched the melee without taking action, that they failed to arrest any of the underage drinkers or combatants, or that they failed to warn everyone that Beninsky or Buscavage had just threatened them), the officers' conduct can most accurately be de-

8. The court is mindful that, because we are ruling on a motion for summary judgment, all facts and inferences must be viewed in a light which is favorable to Plaintiff, the non-movant.

scribed as negligent. The court finds it incomprehensible that McGinn and Kaczmarczyk, through Plaintiff's description of their conduct on the night of December 1st and the morning of December 2nd, could have "intend[ed] the result which actually [came] to pass." *Id.*

Third, Plaintiff argues that, pursuant to *Kneipp,*[9] it has been established that a relationship existed between himself and the officers. The court finds, however, that Plaintiff has failed to adduce sufficient evidence showing the existence of this relationship. The court finds as insufficient Plaintiff's argument that a relationship was created when the officers sent the party-goers back inside the apartment after the fight involving Beninsky, Buscavage, Styka and Schmerfeld, and after hearing the declarant make the threat. Holding otherwise would be tantamount to making police officers liable for failing to protect every conceivable target of every arguably-serious threat.

Fourth, the officers must have used their authority to create an opportunity that otherwise would not have existed for the third party's crime to occur. According to Plaintiff, neither McGinn nor Kaczmarczyk took any affirmative action at all. They simply let the events unfold as they stood idly bye. In *Morse,* the court explicitly stated that "the dispositive factor appears to be whether the state has in some way placed the plaintiff in a dangerous position...." *Morse,* 132 F.3d at 915. The court in *Kneipp* found this fourth factor to be satisfied only because "the affirmative acts of the police officers" increased the danger or risk of injury to the plaintiff. 95 F.3d at 1209. Again, even assuming the truthfulness of Plaintiff's factual depiction, it is inescapable that the

officers did not take the requisite affirmative acts pursuant to both Third Circuit and Supreme Court case law.

Because Plaintiff has failed to satisfy the four-factor test set forth in *Mark,* the court holds that the state-created danger theory is not applicable to this case. Consequently, and pursuant to *DeShaney,* it necessarily follows that Plaintiff has failed to show a substantive due process violation because Plaintiff failed to produce sufficient evidence showing that the individual officers had a duty to protect Burke from the private act of violence which befell him. Thus, Plaintiff has failed to demonstrate that the officers' actions rose to the level of a constitutional violation of Plaintiff's right to substantive due process.

### 2. Qualified Immunity

■ McGinn and Kaczmarczyk also argue that qualified immunity should shield them from liability. Under the doctrine of qualified immunity, the inquiry is divided into two separate issues. First, the court must examine whether the conduct of McGinn and Kaczmarczyk violated clearly established constitutional rights. *See Harlow v. Fitzgerald,* 457 U.S. 800, 818–19, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Second, we must address whether an objectively reasonable person in the officers' position would have known that their conduct would have violated such constitutional rights. *See id.* The analysis generally turns on the "'objective legal reasonableness' of the action ... assessed in light of the legal rules that were 'clearly established' at the time it was taken." *Anderson v. Creighton,* 483 U.S. 635, 639, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987) ("*Anderson II*") (quoting *Harlow,* 457 U.S. at 818–19, 102 S.Ct. 2727). Qualified immunity is applicable even where officials

9. The court in *Kneipp* noted, in a footnote, that it "view[ed] the 'state-created danger' relationship to be different than the 'special relationship' required by *DeShaney* to impose liability under section 1983." 95 F.3d at 1209 n. 22. The court contended that the state-created danger relationship could be satisfied by showing "some contact such that the plaintiff was a foreseeable victim of a defendant's acts in a tort sense." *Id.* The relationship in *DeShaney,* on the other hand, requires some sort of state-created custodial relationship (e.g., incarceration, institutionalization, or some other comparable limit of personal liberty).

"of reasonable competence could disagree" that such acts were objectively reasonable. *See Malley v. Briggs*, 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986).

The determination of qualified immunity upon a motion for summary judgment is entirely appropriate. *See, e.g., Harlow*, 457 U.S. at 818, 102 S.Ct. 2727. The first issue, whether a plaintiff asserts the violation of a clearly established constitutional right, is purely a question of law. *See Sharrar v. Felsing*, 128 F.3d 810, 828 (3d Cir.1997). The second issue, whether the officer reasonably believed in the lawfulness of his or her conduct, is also generally an issue of law to be decided by the court.[10] *See id.*

There is, however, a tension between the "insistence that the immunity defense be decided as a matter of law when the reality is that factual issues must frequently be resolved in order to determine whether the defendant violated clearly established federal law." *Grant v. City of Pittsburgh*, 98 F.3d 116, 122 (3d Cir.1996) (quoting Schwartz, *Section 1983 in the Second Circuit*, 59 Brook.L.Rev. 285, 309 (1993)). Courts have resolved such tension by a careful examination of the record viewed in a light most favorable to the plaintiff upon a summary judgment motion. *Id.*; *see also Moniz v. City of Fort Lauderdale*, 145 F.3d 1278, 1281 (11th Cir.1998); *King v. Beavers*, 148 F.3d 1031, 1032 (8th Cir. 1998). In the case at bar, therefore, we will undergo the analysis by assuming the facts in a light most favorable to Plaintiff and proceed to consider whether the qualified immunity defense is established as a matter of law.

The Supreme Court has explained what it means by clearly established law for the purpose of qualified immunity:

The contours of the right must be sufficiently clear that a reasonable official would understand what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say ... the unlawfulness must be apparent.

*Anderson II*, 483 U.S. at 640, 107 S.Ct. 3034 (citation omitted). Moreover, the Third Circuit has held that when there is a lack of substantially similar authority on point, the law cannot be said to be clearly established. *See Sharrar*, 128 F.3d at 810, 828–29; *Johnson*, 150 F.3d at 286; *Pro v. Donatucci*, 81 F.3d 1283, 1292 (3d Cir. 1996).

A necessary concomitant to the determination of whether the constitutional right asserted by a plaintiff is clearly established is whether the plaintiff has asserted a violation of a constitutional right at all. *See Siegert*, 500 U.S. 226, 233, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991); *County of Sacramento v. Lewis*, 523 U.S. 833, 118 S.Ct. 1708, 1714 n. 5, 140 L.Ed.2d 1043 (1998). If the actions of the government official, as alleged by the plaintiff, do not even rise to a level of a constitutional violation, then that official is clearly entitled to qualified immunity. *See In re City of Philadelphia Litig.*, 158 F.3d 711, 719 (3d Cir.1998).[11]

As discussed above, Plaintiff has failed to show a substantive due process violation under the state-created danger theory. The court, in assuming the truthfulness of

---

**10.** In *Sharrar*, the Third Circuit noted that there may be some instances where a court may choose to resolve disputed facts by resorting to a jury in deciding the qualified immunity question. 128 F.3d at 828.

**11.** There seems to be some confusion as to whether the failure to assert an alleged deprivation of a constitutional right by a plaintiff means that the immunity question need not be reached, *see Sameric Corp. of Delaware,*

*Inc. v. City of Philadelphia*, 142 F.3d 582, 590 n. 6 (3d Cir.1998), or merely that the official is entitled to qualified immunity. *See City of Philadelphia Litig.*, 158 F.3d at 719. This court decides to follow the latter position as it is supported by a more recent Third Circuit opinion and by other sister circuits. *See, e.g., Jones v. Collins*, 132 F.3d 1048, 1052 (5th Cir.1998); *Roe v. Sherry*, 91 F.3d 1270, 1273–74 (9th Cir.1996).

all of Plaintiff's averments, holds that the actions of McGinn and Kaczmarczyk simply did not rise to this level. Hence, the individual officers' in this case are necessarily entitled to qualified immunity. *See City of Philadelphia Litig.*, 158 F.3d at 719.

Even if the we were to hold that Plaintiff did produce sufficient evidence to support the alleged due process violation, the court is nevertheless convinced that the individual officers did not violate Plaintiff's clearly established due process right to be protected by the State from an act of private violence. The case law on point clearly imposes on government officials the duty to protect only when the state itself has affirmatively acted in such a way as to create or exacerbate a plaintiff's precarious situation. *See, e.g., Kneipp*, 95 F.3d at 1209; *Mark*, 51 F.3d at 1152. The case law, however, has only narrowly delineated the situations under which state actors have an affirmative duty to act. Without any cases where some factual correspondence exists with the present case, therefore, this court must conclude that there is no clearly established law and that the individual officers are entitled to qualified immunity. *Pro*, 81 F.3d at 1292.

As the threshold question for the qualified immunity analysis is whether the constitutional right asserted by Plaintiff was clearly established at the time McGinn and Kaczmarczyk acted, *see Siegert*, 500 U.S. at 232, 111 S.Ct. 1789, this court need not move to the analysis of whether the officers' conduct was objectively reasonable. *See Johnson v. Horn*, 150 F.3d 276, 286 n. 7 (3d Cir.1998). Therefore, even if Plaintiff succeeded in showing the substantive due process violation, the individual officers would still prevail on their qualified immunity defense.

### B. Due Process Claims Against Mahanoy City, the Mahanoy City Police Department and Chief John Lewis

Plaintiff also alleges a § 1983 action against Mahanoy City, Mahanoy City Police Department and Chief John Lewis in his official capacity, by claiming that they violated his right to due process through their: (1) custom, policy and practice of failing to address Mahanoy City's problems of, *inter alia*, underage drinking, loitering and fighting; and (2) inadequate supervision of the city's police officers. Pl.'s Compl. at ¶¶ 91–117. Although Defendants move for summary judgment on these claims, their motion utterly fails to address Plaintiff's municipal liability claims.[12] Defs.' Mot. at ¶¶ 8–9.[13] We feel compelled, however, to address whether a triable issue of fact exists as to Defendants' municipal liability.

Defendants miss the point entirely. A section 1983 allegation made against a municipality or state officials in their official capacities invokes an entirely different analysis from ascertaining liability of an individual state actor. It has been clearly established that municipalities cannot be sued as an employer that is vicariously liable for an employee under § 1983. *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Nor can municipalities be accorded the protection of qualified immunity. *Owen v. City of Independence*, 445 U.S. 622, 650, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980).

Local governments and entities, however, may be held liable under § 1983 for constitutional violations caused by an official policy or custom of the municipality. *Monell*, 436 U.S. at 694, 98 S.Ct. 2018. Moreover, since suing state officials in

12. In their reply, Defendants make an insolent reference to such issues: "[s]ince there does not appear to be any Fourteenth Amendment violation, discussing the *Monell* claim itself, hardly seems worth the effort." Defs.' Reply Br. at 2. We would like to point out that a fleshed out discussion on the issue is a obligatory responsibility of the Defendants on a motion for summary judgment.

13. Defendants' Motion for Summary Judgment filed on December 21, 1998, is hereinafter referred to as: "Defs.' Mot. at ___."

their official capacity is equivalent to suing the municipality itself, *see Kentucky v. Graham,* 473 U.S. 159, 165–66, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985); *Will v. Michigan Dep't of State Police,* 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989), such officials may similarly be held liable for instituting an official policy or custom of the municipality. *Monell,* 436 U.S. at 694, 98 S.Ct. 2018. Only those municipal officers and employees who have final policy-making authority can by their action subject their municipal employers to § 1983 liability. *Pembaur v. City of Cincinnati,* 475 U.S. 469, 479–80, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986).

■ The first issue this court must consider is if the granting of summary judgment in favor of the individual officers precludes our consideration of municipal liability. The Supreme Court has held that a municipal entity cannot be held liable under the Fourth Amendment if there is no underlying constitutional violation by the individual officer. *City of Los Angeles v. Heller,* 475 U.S. 796, 106 S.Ct. 1571, 89 L.Ed.2d 806 (1986) (per curiam). In *Heller,* the Court reversed the verdict against the city because it was inconsistent with the jury finding in favor of the officer: "[i]f a person has suffered no constitutional injury at the hands of the individual police officer, the fact that departmental regulations might have authorized the use of constitutionally excessive force is quite beside the point." 475 U.S. at 799, 106 S.Ct. 1571; *see also Williams v. Borough of West Chester,* 891 F.2d 458 (3d Cir.1989).

The Third Circuit, however, has carefully distinguished *Heller* by holding that in certain instances, a municipality can be held independently liable for violating a plaintiff's constitutional rights, even if there is no individual liability on the part of the officer. *Fagan v. City of Vineland,*

22 F.3d 1283 (en banc), *aff'd in part,* 22 F.3d 1296 (3d Cir.1994). The *Fagan* court distinguished *Heller* by limiting its holding to cases arising under § 1983 for violations of the Fourth Amendment. *Id.* at 1292. The Third Circuit also noted that the plaintiff had brought a separate and independent constitutional claim against the municipality, unlike in *Heller,* which was based on a theory of respondeat superior. *Id.* Finally, the court stated that finding municipal liability independent of its officers is not logically inconsistent because the claims in *Fagan* were "based on different theories and require proof of different actions and mental states." [14] *Id.; see also Simmons v. City of Philadelphia,* 728 F.Supp. 352, 357 (E.D.Pa.1990), *aff'd,* 947 F.2d 1042 (3d Cir.1991).

This court finds that we are required to follow Third Circuit law and examine the possibility of municipal liability under § 1983, although the individual officers have not been held liable in this situation. The present case is close in identity to *Fagan* because Plaintiff has alleged substantive due process claims. 22 F.3d at 1291–92. Moreover, Plaintiff has also independently alleged constitutional claims against the City, Police Department and Chief of Police. *Id.* at 1292.

■ Thus, we turn to whether there exists an issue of material fact with respect to Defendants' municipal liability. In Count I, Plaintiff alleges that Defendants allowed a custom or practice of inaction in addressing public and underage drinking and disorderly conduct, which violated Plaintiff's substantive due process rights. Pl.'s Compl. at ¶¶ 91–106. Under § 1983, a municipality may be held liable for constitutional violations caused by an official policy or well-settled custom. *Monell,* 436 U.S. at 694, 98 S.Ct. 2018. A municipal custom for § 1983 purposes is

---

**14.** We note that other circuit courts have explicitly disagreed with the Third Circuit in *Fagan. See, e.g., Evans v. Avery,* 100 F.3d 1033, 1039–40 (1st Cir.1996); *Thompson v. Boggs,* 33 F.3d 847, 859 n. 11 (7th Cir.1994). They reject the holding in *Fagan* and broadly apply the principle elucidated in *Heller* that a municipality cannot be held liable absent a constitutional violation by its officers. *Id.*

such "practices of state officials ... [as are] so permanent and well-settled as to constitute a 'custom or usage' with the force of law." *Id.* at 691, 98 S.Ct. 2018 (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 167–68, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970)). Municipal liability attaches only when the execution of a government's policy or custom supports a violation of constitutional rights. *Id.* at 691–95, 98 S.Ct. 2018; *Bielevicz v. Dubinon,* 915 F.2d 845, 850 (3d Cir.1990).

In Count II, Plaintiff separately alleges that Defendants are liable under § 1983 because of inadequate training and supervision by the municipality. Pl.'s Compl. at ¶¶ 107–117. The Supreme Court has held that inadequate training procedures "may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton v. Harris,* 489 U.S. 378, 388, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989). To meet this deliberate indifference standard, the failure to train must reflect a deliberate or conscious choice made by the municipality. *Id.* at 389, 109 S.Ct. 1197. This failure to train must have inflicted constitutional injury upon the Plaintiff.

Under either scenario for municipal liability, the deliberate indifference or policy and custom of the municipality must inflict constitutional injury. *Mark,* 51 F.3d at 1149–50. The Supreme Court in *Collins v. City of Harker Heights* made clear that in a municipal liability case, the "proper analysis requires us to separate two different issues when a § 1983 claim is asserted against a municipality: (1) whether plaintiff's harm was caused by a constitutional violation, and (2) if so, whether the city is responsible for that violation." 503 U.S. 115, 120, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992). Thus, the mere existence of a policy of inaction or inadequate training of officers with respect to drinking and disorderly conduct is not actionable under

§ 1983 if such conduct does not inflict constitutional injury. *See Searles v. Southeastern Pennsylvania Transp. Auth.,* 990 F.2d 789, 791–93 (3d Cir.1993); *see also Mark,* 51 F.3d at 1149–50, 1153 n. 13; *Frazier v. City of Philadelphia,* 927 F.Supp. 881, 886–87 (E.D.Pa.1996).

In considering whether Defendants' conduct rises to the level of a constitutional violation, we must examine the facts in a light most favorable to the Plaintiff. As comprehensively discussed above with respect to the liability of individual officers under § 1983,[15] the facts of this case do not rise to the level where the state-created danger theory of *DeShaney* becomes applicable. The conduct of the individual officers in this case did not meet the four-factor test of *Mark,* where officers acted recklessly by using their positions as state actors to leave "a discrete plaintiff vulnerable to foreseeable injury." 51 F.3d at 1152–53. Even if we accept that the existence of a municipal policy or custom resulted in the failure of individual officers to address the city's problems of underage drinking, loitering and fighting, such municipal inaction cannot be said to inflict constitutional injury. Thus, we need not reach the issue of whether Defendants are subject to *Monell* liability where, as here, we have concluded that no constitutional right was violated. *Searles,* 990 F.2d at 794.

Moreover, the Court in *Collins* expressed its "reluctan[ce] to expand the concept of substantive due process because guideposts for responsible decisionmaking in this uncharted area are scarce and open-ended." *Id.* at 125, 112 S.Ct. 1061. We believe that we must follow the advice of *Collins* which stressed the importance of "judicial self-restraint" when considering the liability of a municipality as to alleged violations of substantive due process in the § 1983 context. *Id.*

As a matter of law, we find that there is no constitutional violation that occurred on

---

15. *See* discussion above at III.A.1.a.

the facts as presented in the summary judgment record. As a consequence, it is unnecessary to address the second prong of *Collins.* Thus, Defendants are granted summary judgment on both of Plaintiff's municipal liability claims under § 1983.

## IV. REMAINING DEFENDANTS

We now address the disposition of state law claims raised by Plaintiff against certain Defendants (Counts VI–VIII).[16] Plaintiff's state law claims are before us under supplemental jurisdiction brought in connection with claims "arising under [the] Constitution, [and] the Laws of the United States." U.S. Const., art. III, § 2.

State law claims remain against the following Defendants:[17] (1) Jack's Locker Room; (2) John Kaczmarczyk individually and as the owner of Jack's Locker Room;[18] (3) Sheldon Buscavage; and (4) the Estate of William J. Beninsky. In addition, Defendants Jack's Locker Room and John Kaczmarczyk individually and as the owner of Jack's Locker Room filed a Third–Party Complaint on January 15, 1998 against Holly Rhoades and Jessica Didgen.

Prior to Congress' codification of supplemental jurisdiction in 28 U.S.C. § 1367, it had "consistently been recognized that pendent jurisdiction [was] a doctrine of discretion, not of plaintiff's right." *United Mine Workers of America v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966) (citing *Massachusetts Universalist Convention v. Hildreth & Rogers Co.,* 183 F.2d 497 (1st Cir.1950)); *Moynahan v. Pari–Mutuel Employees Guild,* 317 F.2d 209, 211–212 (9th Cir.1963). This discretionary aspect of pendent jurisdiction has always allowed federal courts to decline to decide cases that are primarily state law claims. *Gibbs,* 383 U.S. at 727, 86 S.Ct. 1130. Finally, "if the federal claims are ·dismissed ... the state claims should be dismissed as well." *Id.* at 726, 86 S.Ct. 1130.

In the absence of any federal question or constitutional issue, this court has the discretion to dismiss Plaintiff's state law claims on jurisdictional grounds. Plaintiff, however, is not without remedy. On the contrary, the statute of limitations on Plaintiff's state law claims is tolled for a minimum of 30 days from the date of dismissal. With the codification of supplemental jurisdiction, Congress has allowed for the dismissal of state claims, arising under article III jurisdiction and brought under § 1367(a), to benefit from a tolling of the statute of limitations. 28 U.S.C. § 1367(d). Thus, we dismiss the state law claims without prejudice against the following Defendants: (1) Jack's Locker Room; (2) John Kaczmarczyk individually and as the owner of Jack's Locker Room; (3) Sheldon Buscavage; and (4) the Estate of William J. Beninsky.

Moreover, it follows that because third-party claims are derivative of Plaintiff's claim, we must also dismiss all Third–Party Defendants. *See* Fed.R.Civ.P. 14. Once the main action is dismissed, third-party claims become moot because a "third party defendant's liability is secondary to, or derivative of, the original defendant's liability on the original plaintiff's claim." *Faser v. Sears, Roebuck & Co.,* 674 F.2d 856, 860 (11th Cir.1982); *Resolution Trust*

---

**16.** We have already dismissed the state law claim against Defendants Mahanoy City, Mahanoy City Police Department and Chief John Lewis in his official capacity (Count III). *See* discussion above, III.

**17.** All claims and cross-claims against Fowler's Tavern, Michael T. Fowler, individually and as owner of Fowler's Tavern, John C. Fowler, individually and as owner of Fowler's Tavern have been dismissed by a stipulation

agreed to by all parties, filed on February 4, 1999. We have reviewed this stipulation and it is acceptable to the court.

**18.** We also note that John C. Kaczmarczyk is a Defendant here because of his role as an owner of Jack's Locker Room. His role as a police officer and state actor are entirely independent and have already been addressed by this court. *See* discussion above, III.

*Corp. v. Farmer,* 836 F.Supp. 1123, 1129–30 (E.D.Pa.1993). Thus, we also dismiss Third–Party Defendants Holly Rhoades and Jessica Didgen from the case without prejudice.

## V. CONCLUSION

For all of the above reasons, Defendants' Motion for Summary Judgment is GRANTED with respect to all § 1983 claims and the state law claim of wrongful death against Defendants Mahanoy City, Mahanoy City Police Department, Chief John Lewis in his official capacity, Officer John Kaczmarczyk, Officer William McGinn and Officer Jane Doe. Remaining Defendants Jack's Locker Room, John Kaczmarczyk individually and as the owner of Jack's Locker Room, Sheldon Buscavage, the Estate of William J. Beninsky and Third–Party Defendants Holly Rhoades and Jessica Didgen are dismissed from this case without prejudice. An appropriate order follows.

## ORDER

AND NOW, this 3rd day of March, 1999, upon consideration of Motion for Summary Judgment by Defendants Mahanoy City, Mahanoy City Police Department, John Lewis in his official capacity as Police Chief, Officer John Kaczmarczyk, Officer William McGinn and Officer Jane Doe with accompanying Memorandum of Law and exhibits filed on December 21, 1998, Plaintiff's Brief in Opposition to Defendants' Motion for Summary Judgment with accompanying exhibits filed on February 1, 1999, and Defendants' Reply Brief filed on February 10, 1999, it is hereby ORDERED that:

(1) Defendants' Motion for Summary Judgment is GRANTED in its entirety;

(2) All claims against Defendants Mahanoy City, Mahanoy City Police Department, John Lewis in his official capacity as Police Chief, Officer John Kaczmarczyk, Officer William McGinn and Officer Jane Doe are DISMISSED from this case with prejudice;

(3) All remaining claims against Defendants Jack's Locker Room, John Kaczmarczyk individually and as the owner of Jack's Locker Room, Sheldon Buscavage, the Estate of William J. Beninsky and all claims against Third–Party Defendants Holly Rhoades and Jessica Didgen are DISMISSED from this case without prejudice to Plaintiff's right to refile this matter in state court.

This case is closed.