Marlene WHITE, Administratrix of the Estate of Nadine White, Deceased; and Marlene White, individually and in her own right, and Dontae Benn, a minor by his P/N/G/ Daro Larue Benn, Plaintiffs,

v.

CITY OF PHILADELPHIA, Bruce Wright, Individually and in his official capacity as Police Officer, City of Philadelphia, Omharr Jenkins, Individually and in his official capacity as Police Officer, City of Philadelphia, John Doe A through Z, Whose names are currently unknown, individually and in their official capacity as police officers, City of Philadelphia, Defendants.

No. 00–CV–2660.

United States District Court, E.D. Pennsylvania.

Oct. 27, 2000.

Patricia J. Cooney, Philadelphia, PA, for plaintiff.

Peter D. Winebrake, Philadelphia, PA, for defendant.

### *MEMORANDUM*

DuBOIS, District Judge.

## I. INTRODUCTION

This case arises out of the refusal by officers of the Philadelphia Police Department to make a forcible entry into the apartment of Nadine White in response to a 911 call placed on May 25, 1998. Plaintiffs allege in their complaint that Jeffrey Sessoms was in Nadine White's apartment when the police arrived and that he murdered her after they left the scene. Plaintiffs brought suit under 28 U.S.C. § 1983 and state law. Jurisdiction is based on 28 U.S.C. §§ 1331 and 1367.

█ Plaintiff Marlene White is both the administratrix of Nadine White's estate and Nadine White's mother; she brought suit both on behalf of the estate and individually and in her own right.[1] Plaintiff Dontae Benn is Nadine White's minor son; plaintiffs' complaint does not specify whether he brought suit individually or on his mother's behalf.[2] Named as defen-

---

1. For the purposes of the motion to dismiss, defendants assume that Marlene White has standing to bring suit in her individual capacity for the loss of her adult child. The Court notes the somewhat unsettled state of the law concerning whether a parent may sue under section 1983 for the constitutional deprivations suffered by the parent's adult child. In *Estate of Bailey by Oare v. County of York*, the Third Circuit relied on the Seventh Circuit's determination that a parent of a child who has died as a result of state action may maintain an action under § 1983 for the unlawful deprivation of the child's liberty. *Estate of Bailey*, 768 F.2d 503, 509 n. 7 (1985) (citing *Bell v. City of Milwaukee*, 746 F.2d 1205, 1242–45, 1251–53 (7th Cir.1984)), *overruled on other grounds, DeShaney v. Winnebago County Dep't of Social Services*, 489 U.S. 189, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989). In concluding that a parent may recover for constitutional injury inflicted on a 23 year-old child, the Seventh Circuit wrote that "[t]he protected relationship includes the parent's 'interest in the companionship, care, custody,

and management' of the child." *Bell v. City of Milwaukee*, 746 F.2d 1205, 1245 (quoting *Stanley v. Illinois*, 405 U.S. 645, 651, 92 S.Ct. 1208, 1212, 31 L.Ed.2d 551 (1972)).

Other courts have found this reasoning persuasive, ruling that parents of adult children may maintain actions under § 1983 for deprivations of the constitutional rights of the parents' adult children. *See, e.g., Schieber v. City of Philadelphia*, 1999 WL 482310, at *2 (E.D.Pa. July 9, 1999); *Estate of Cooper v. Leamer*, 705 F.Supp. 1081, 1086–87 (M.D.Pa. 1989); *Agresta v. Sambor*, 687 F.Supp. 162, 164 (E.D.Pa.1988) (concluding that parents had standing to bring suit under § 1983 regardless of the age and marital status of son).

This Court agrees with the foregoing authority and concludes that Marlene White has standing to sue on behalf of her deceased adult child.

2. The plaintiffs allege that they bring suit to redress the "violation of their rights under the United States Constitution...." Complaint

dants are the City of Philadelphia and Philadelphia Police Officers Bruce Wright ("Officer White") and Omharr Jenkins ("Officer Jenkins") (referred to collectively as "Officers").[3]

Currently before the Court is defendants' motion to dismiss the complaint for failure to state a claim upon which relief can be granted. For the following reasons, defendants, motion will be granted and the complaint will be dismissed as to all defendants.

## II. BACKGROUND

The facts of this case are undeniably tragic. Plaintiffs allege that on May 25, 1998, Officer Wright, Officer Jenkins and possibly other John Doe Officers were dispatched to the home of Nadine White in response to a 911 call placed by Nadine White's neighbors. The neighbors placed the call at approximately 4:21 a.m. in response to screaming from Nadine White's apartment. Allegedly, at the time the Officers arrived at the apartment, Nadine White and Jeffrey Sessoms, her murderer, were inside the apartment. According to the complaint, when the Officers arrived at the scene, they knocked on the apartment door. No one responded, and hearing nothing, the Officers refused to make a forcible entry. Plaintiffs aver that Mr. Sessoms murdered Nadine White after 4:21 a.m. and that she was still alive when the Officers refused to force entry into her apartment. *See* Complaint ¶¶ 3 & 23.

Based on these facts, plaintiffs assert two claims pursuant to 42 U.S.C. § 1983, one against the Officers for a violation of Nadine Wright's right not to be deprived of life or liberty without due process of law in violation of the Fourteenth Amendment (Count 1); and one against the City of Philadelphia for a violation of Nadine

White's rights as a result of its policies and practices in failing to train and supervise its police officers (Count Two). Plaintiffs also assert two state law claims against the Officers—a wrongful death action (Count Three); and a survival action (Count Four).

## III. STANDARD OF REVIEW

Rule 12(b)(6) of the federal rules of civil procedure provides that a defense of "failure to state a claim upon which relief can be granted" may be raised by motion in response to a pleading. Fed.R.Civ.P. 12(b)(6). In considering a motion to dismiss under Rule 12(b)(6), a court must take all well pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. *See Jenkins v. McKeithen,* 395 U.S. 411, 421, 89 S.Ct. 1843, 1849, 23 L.Ed.2d 404 (1969). The court must only consider those facts alleged in the complaint in considering such a motion. *See ALA, Inc. v. CCAIR, Inc.,* 29 F.3d 855, 859 (3d Cir.1994). A complaint should be dismissed if "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984).

## IV. DISCUSSION

### A. Claims Against the Officers Under 42 U.S.C. § 1983

 Plaintiffs bring two claims pursuant to 42 U.S.C. § 1983. Section 1983 provides, in relevant part, as follows: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ... subjects, or causes to be subjected, any ... person ... to the deprivation of any rights, privileges, or immunities secured by the Constitution

---

¶ 4. The Court analyzes plaintiffs' individual capacity claims in Part IV(A)(2), *infra.*

**3.** Plaintiffs allege that it is possible "other unidentified John Doe Police Officers were dispatched to the scene." Complaint ¶ 2.

They proposed the Filing of an amended complaint if any such unnamed officers were identified during discovery. Complaint ¶ 12. To date, the plaintiffs have not filed an amended complaint.

and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . ." 42 U.S.C.A. § 1983 (West Supp.2000). Section 1983 does not create substantive rights; in order to state a claim under § 1983, plaintiffs must demonstrate a violation of a right created by the Constitution or federal law. *See, e.g., Morse v. Lower Merion School District,* 132 F.3d 902, 906–7 (3d Cir.1997) (citing *Baker v. McCollan,* 443 U.S. 137, 144 n. 3, 99 S.Ct. 2689, 2695 n. 3, 61 L.Ed.2d 433 (1979)).[4]

■ State actors do not have an affirmative obligation to protect individual citizens from private violence. As the Supreme Court wrote in *DeShaney v. Winnebago County Dep't of Social Services,* 489 U.S. 189, 196, 109 S.Ct. 998, 1003, 103 L.Ed.2d 249 (1989), "the Due Process Clauses generally confer no affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual." There are, however, two exceptions to this rule—(1) cases in which there exists a "special relationship" between the state and an individual such that the state owes the individual an affirmative duty to protect the health and safety of such individual, *see DeShaney,* 489 U.S. at 197–201, 109 S.Ct. 998; and (2) cases in which the state has created a danger that causes harm to an individual. *See Morse v. Lower Merion School District,* 132 F.3d 902, 907 (3d Cir.1997); *Kneipp v. Tedder,* 95 F.3d 1199, 1204–05 (3d Cir.1996). Plaintiffs in this case bring suit under the second exception, on a state created danger theory. The Court will first analyze plaintiffs' claims on behalf of Nadine White; the Court will then turn to plaintiffs' claims in their individual capacities.

### 1. The State Created Danger Theory of Liability.

In *DeShaney,* the Supreme Court considered whether the state had an affirmative obligation to protect Joshua DeShaney, a chronically abused child, from his abusive father when the state social services agency was aware that Joshua was in danger. *DeShaney,* 489 U.S. at 191–94, 109 S.Ct. at 1001–03. Concluding that an affirmative duty attaches in very limited circumstances, the Supreme Court, in rejecting plaintiffs' claims, held that "[w]hile the State may have been aware of the dangers that Joshua faced in the free world, it played no part in their creation, nor did it do anything to render him any more vulnerable to them." *Id.* at 201, 109 S.Ct. at 1006.

■ Based on this language from *DeShaney,* the Third Circuit articulated the state created danger theory of liability, which was applied for the first time in *Kneipp v. Tedder,* 95 F.3d 1199 (3d Cir. 1996). In *Kneipp,* the Third Circuit identified four prerequisites to liability when suit is brought on a state created danger theory. To establish a viable claim under this theory, the plaintiff must show:

(1) the harm ultimately caused was foreseeable and fairly direct;

(2) the state actors acted in willful disregard for the safety of the plaintiff;

(3) there existed some relationship between the state and the plaintiff; and

(4) the state actors used their authority to create an opportunity that otherwise would not have existed for the third party's crime to occur.

95 F.3d 1199, 1208 (3d Cir.1996) (quoting *Mark v. Borough of Hatboro,* 51 F.3d 1137, 1152 (3d Cir.1995)). Applying this four-factor test (the *"Mark* test"), the Court concludes that the plaintiffs in this case have failed to allege facts sufficient to establish liability for a violation of Nadine

---

4. It is well settled that action undertaken by police officers in the exercise of their official duties is action taken under color of state law.

*See Screws v. United States,* 325 U.S. 91, 110, 65 S.Ct. 1031, 1039–40, 89 L.Ed. 1495 (1945).

White's rights based on a state created danger theory.

### a. Foreseeable and Fairly Direct Injury

Plaintiffs allege that the Officers in this case "had every reason to believe that Nadine White's life was in extreme danger and that entry was necessary to save her life." Complaint ¶ 24. The Officers responded to a 911 call in which neighbors reported a "person screaming." Complaint ¶ 15. Once there, the neighbors directed the Officers to Nadine White's door and told them that they had heard screaming and a dog barking. Complaint ¶ 16. Based on these allegations, the Court concludes, as a matter of law, that Nadine White's injuries were not foreseeable and fairly direct.

In *Morse v. Lower Merion School District*, 132 F.3d 902 (3d Cir.1997), the Third Circuit addressed the limits of foreseeability under the state created danger exception. In *Morse*, plaintiffs alleged constitutional injury resulting from the murder of a day care worker, Diane Morse, by an individual with a history of mental illness. Ms. Morse was shot and killed in a classroom that her murderer entered via an open rear entrance to the school building. Plaintiffs alleged that her death was caused by defendants' leaving the rear entrance open to accommodate workers who were engaged in construction projects around the school. The complaint also included allegations that defendants were aware of the potential danger presented by the open door and thus created an opportunity for the attack on Ms. Morse that would not otherwise have existed. Analyzing the facts under the state created danger theory of liability, the Third Circuit

rejected the claim, concluding that "the tragic harm which ultimately befell Diane Morse was too attenuated from defendants' actions to support liability." *Id.* at 908.

Similarly, in *Estate of Burke v. Mahoney City*, No. 99–1357, 2000 WL 504271 (3d Cir. Mar.31, 2000) (unreported),[5] the Third Circuit concluded that the harm plaintiff allegedly suffered was not foreseeable. The claim in *Burke* arose out of a "drinking party." *See Estate of Burke v. Mahoney City*, 40 F.Supp.2d 274 (E.D.Pa. 1999), *aff'd*, 213 F.3d 628 (3d Cir.2000). Plaintiff alleged that a disturbance at the party resulted in two intoxicated guests, Beninsky and Buscavage, being ejected from the party. *Id.* at 276. After they were ejected, Beninsky approached two police officers and informed them that he and Buscavage had been assaulted and that the police should arrest the individuals responsible. *Id.* at 277. When the police informed Beninsky that there was nothing they could do about his complaint, plaintiff alleged that Beninsky became angry and stated "If you don't do your job, I'll take care of it myself." *Id.* (quoting Pl.'s Br. at 9). In addition, the plaintiff contended that either Beninsky or Buscavage[6] had stated: " 'I'm going to kill ya's ... blow your f'ing heads off." *Id.* (quoting Defs.' Br. at 3). Beninsky returned to the party shortly thereafter and shot and killed Burke and injured several others. *Id.*

The plaintiff in *Burke* contended that the officers' knowledge of the threats and their failure to take appropriate action created a dangerous situation that was actionable under a state created danger theory of liability. *Id.* at 279. The District Court

---

**5.** The Court notes that, under Third Circuit Internal Operating Procedures §§ 5.1, 5.3, 5.4, 5.6 and 5.8, this unreported memorandum opinion was not circulated to the non-panel active judges and has no precedential value. Nevertheless, this Court finds it instructive.

**6.** It is not entirely clear who made this final threat. The District Court noted that the witnesses disagreed as to whether Beninsky or Buscavage made this threat, *see Burke*, 40 F.Supp.2d at 277 n. 5. The Third Circuit, however, wrote that the threat was made by Beninsky. *Burke*, No. 99–1357, 2000 WL 504271 at 4 (3d Cir. Mar.31, 2000) (unreported).

and the Third Circuit disagreed. On the issue of foreseeability, the Third Circuit agreed with the District Court's conclusion that " 'vacuous threats by angry and intoxicated young adults are far from uncommon' and do not provide strong grounds for foreseeability." *Burke,* No. 99–1357, 2000 WL 504271 at 7 (3d Cir. Mar.31, 2000) (quoting *Burke,* 40 F.Supp.2d at 281). Further, the Third Circuit wrote that it did not believe that Beninsky's returning to the party to shoot Burke was a foreseeable consequence of the police officers' alleged conduct. *Burke,* No. 99–1357, 2000 WL 504271 (3d Cir. Mar.31, 2000).

Just as "vacuous threats by angry and intoxicated young adults" are common, so are domestic disturbances—including screaming and barking dogs. In this case, it was not foreseeable that failure to respond to screaming would result in murder.[7] As such, the Court concludes that plaintiffs have failed to allege facts sufficient to meet the first prong of the *Mark* test.

### b. Culpability

*Mark*'s second prong—whether the state actor acted in willful disregard for the safety of the plaintiff—requires that the state actor's conduct "shock the conscience." *See County of Sacramento v. Lewis,* 523 U.S. 833, 118 S.Ct. 1708, 1240, 140 L.Ed.2d 1043 (1998) (holding that executive action must "shock the conscience" to find liability ill a due process challenge); *Miller v. City of Philadelphia,* 174 F.3d 368 (3d Cir.1999) (applying the "shocks the conscience" test to a substantive due process challenge to executive action); *Cannon v. City of Philadelphia,* 86 F.Supp.2d 460, 469 (E.D.Pa.2000) (concluding, based on *Lewis* and *Miller,* that "the actions of the state actor must shock the conscience" to trigger liability under § 1983 based on a state created danger theory).

As the Supreme Court explained in *Lewis,* action that shocks the conscience "in one environment may not be so patently egregious in another, and [the Court's] concern with preserving the constitutional proportions of substantive due process demands an exact analysis of circumstances before any abuse of power is condemned as conscience-shocking." 523 U.S. at 850, 118 S.Ct. at 1718–19. For example, the *Lewis* Court drew a sharp distinction between the deliberate manner in which decisions in the prison setting are normally made and the quick decision making required by a police officer involved in a high speed chase. *See id.* at 851, 118 S.Ct. at 1719.

The case before this Court falls somewhere between the two extremes compared in *Lewis.* As the Supreme Court has observed, "the police on an occasion calling for fast action have obligations that tend to tug against each other. Their duty is to restore and maintain lawful order, while not exacerbating disorder more than necessary to do their jobs." *Id.* at 853, 118 S.Ct. at 1720. The Officers in this case were similarly facing conflicting responsibilities: on the one hand, according to the complaint, the Officers were being pressured by neighbors to break tile door down; on the other hand, the Officers' reluctance to invade a seemingly peaceful residence pulled in the other direction. Under these circumstances, the Court concludes as a matter of law that the Officers' behavior was not conscience-shocking.

### c. The Foreseeable Plaintiff Requirement

The third prong of the *Mark* test—the existence of a relationship between the state and plaintiff—permits a finding of liability only if "the victim is 'known and identified,' and not 'simply a member of the greater public.' " *Morse,* 132 F.3d at 906 (quoting *Mark v. Borough of Hatboro,*

---

**7.** *But see Schieber v. City of Philadelphia,* 1999 WL 482310, at *4 (July 9, 1999) (concluding that harm suffered was foreseeable and fairly direct when police failed to intervene after responding to a 911 call reporting someone screaming).

51 F.3d 1137, 1153 (3d Cir.1995)). Described by the Third Circuit as the "foreseeable plaintiff" requirement, *see Morse*, 132 F.3d at 912 n. 11, there must have been a particular danger to the victim of the resulting harm, " 'contemplat[ing] some contact such that the plaintiff was a foreseeable victim of the defendant's acts in a tort sense.' " *Id.* at 912 (quoting *Kneipp*, 95 F.3d at 1209 n. 22).

Because the Court concludes the injury suffered by Nadine White was not foreseeable, the Court does not view her as a foreseeable plaintiff. On this issue, plaintiffs contend that concern for Nadine White's safety precipitated the 911 call her neighbors placed; her neighbors specifically identified her apartment as the site of a potential danger. *See* Complaint ¶¶ 1, 14, 16, 23, 31. Plaintiffs argue that, based on these facts, the police should have foreseen that their actions could cause danger to the occupant of the apartment. The Court disagrees. As there was no foreseeable injury, there was no "contact" between the defendants and decedent—Nadine White could not have been a "Foreseeable victim of the defendant's acts in a tort sense." *Morse*, 132 F.3d at 912.

### d. Creating an Opportunity that Would not Otherwise Have Existed

The fourth prong of the test applied in *Mark* requires that "the state actors used their authority to create an opportunity that otherwise would not have existed for the third party's crime to occur." *Kneipp*, 95 F.3d 1199, 1208 (quoting *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1141 (3d Cir.1995)). Plaintiffs allege that as a result of the Officers' failure to intervene, the "deadly danger that Nadine White faced was increased." Complaint ¶ 4. Plaintiffs further contend that this failure "caused her murder by giving the killer the opportunity to hold her hostage and commit various criminal acts which caused her death." *Id.* at ¶ 24.

These allegations, when viewed in the light most favorable to the plaintiff, do not set forth facts sufficient to meet the requirements of the fourth prong of the *Mark* test. As discussed in *Henderson v. City of Philadelphia*, to satisfy this fourth factor, the "court must determine ... whether the officers' acts or omissions 'placed' [the victim] in greater danger than he already faced such that the state can be said to have 'created' a danger to [the victim]." *Henderson v. City of Philadelphia*, 1999 WL 482305, at *11 (E.D.Pa. July 12, 1999), *aff'd*, 216 F.3d 1076 (3d Cir.2000). *See also Estate of Burke v. Mahoney City*, 40 F.Supp.2d 274, 282 (E.D.Pa.1999) (dismissing § 1983 claim brought against municipality and individual officers upon deciding that the state created danger exception did not apply because, *inter alia*, defendants did not undertake the "requisite affirmative acts" necessary to satisfy the fourth prong of the *Mark* test), *aff'd*, 213 F.3d 628 (3d Cir.2000).

In *Kneipp v. Tedder*, the first case in which the Third Circuit found a substantive due process violation under the state created danger exception, the court concluded that the police affirmatively placed Samantha Kneipp in jeopardy. *Kneipp*, 95 F.3d 1199 (3d Cir.1996). On the night Samantha Kneipp was injured, Police Officer Wesley Tedder stopped her and her husband, Joseph Kneipp, while they were walking home from a bar near their residence. According to her husband, Samantha was visibly intoxicated and unable to walk without assistance. Shortly after they were stopped, other police officers arrived and Joseph asked one of the officers if he could return home to the babysitter who was watching his son. The officer replied in the affirmative and Joseph left the scene. After Joseph left, Officer Tedder sent Samantha home alone; she then fell to the bottom of an embankment where she suffered hypothermia and subsequent anoxia as a result of her exposure to the cold. Based on these facts, the Third Circuit concluded that the officers

had affirmatively acted to create a dangerous situation: "[T]he police officers intervened to cut off Samantha's private source of protection by giving Joseph permission to go home alone, thereby increasing the danger that Samantha would suffer harm in her visibly intoxicated state when they abandoned her." *Id.* at 1210.

Unlike the situation in *Kneipp*, where officers cut Samantha Kneipp off from her private source of aid, the district court in *Henderson* did not find a state created danger where an individual's private source of rescue was still available. *See Henderson v. City of Philadelphia*, 1999 WL 482305. The case arose out of an incident involving the involuntary commitment of Salim Henderson, age 20, a diagnosed schizophrenic, to a mental health institution. To effect his commitment, Donna Henderson, Salim Henderson's mother, called 911 to have her son transported to Misericordia Hospital; two officers were sent to her home.

As the officers were reviewing his commitment papers, Salim Henderson stated that he did not want to go to the hospital and told the officers that he had to go upstairs for something. Donna Henderson and the police did not follow him upstairs. Once Salim Henderson was "out of earshot," Donna Henderson informed the police that she was concerned that Henderson might jump. *Id.* at *2. Three to four minutes later, Salim Henderson jumped from the second-story window; he suffered severe and permanent injuries as a result of the fall. Plaintiffs brought suit under § 1983, alleging that the officers violated Salim Henderson's substantive due process right to bodily integrity by failing to take him into custody and thus preventing him from injuring himself.

Based on these allegations, the district court in *Henderson* concluded that the plaintiffs had failed to establish that the officers created a situation that increased any risk of harm or subjected the plaintiffs to risk that did not exist before the officers acted. *Henderson*, at *11. Comparing

the case to *Kneipp*, where police officers interfered with Joseph Kneipp's attempt to take his intoxicated wife home safely, the court observed that the officers did not cut Henderson off from his private source of aid: "[T]he officers in this case exerted no control over Henderson's environment and did not cut him off from the assistance of his mother." *Id.* at *11–12.

The Officers in the instant case likewise did not exert any control over Nadine White's environment or interfere with any source of private assistance. Rather, the Officers "simply let the events unfold as they stood idly by[ ]." *Burke*, 40 F.Supp.2d at 282. In response to the 911 call placed by Nadine White's neighbors, the Officers knocked on Nadine White's door several times. Complaint ¶ 17. Upon hearing no response, the Officers refused the neighbors' request to break down the door and left the scene. *Id.* at ¶¶ 17–18. As set forth in the complaint, the Officers' investigation of the call lasted less than five minutes. *Id.* at ¶ 18.

Plaintiffs have not alleged in their complaint facts sufficient to meet the fourth prong of the *Mark* test with respect to the claims asserted on behalf of Nadine White. The Officers did nothing to place Nadine White in jeopardy—they only failed to protect Nadine White from private violence. Such inaction does not create liability.

Plaintiffs have failed to allege in their complaint facts sufficient to meet all four requirements of the *Mark* case. Thus, the Court concludes that plaintiffs have not stated a claim on Nadine White's behalf upon which relief can be granted against defendant Officers under the state created danger theory of liability. The Court now turns to plaintiffs' individual claims.

## 2. Plaintiffs' Individual Capacity Claims

Plaintiffs Marlene White, Nadine White's mother, and Dontae Benn, Nadine White's minor son, allege generally that they seek redress for the violation of "their

rights." Complaint ¶ 4. More specifically, they assert that they have been deprived of the rights of "motherhood, aid, comfort, support, familial companionship, parenthood, and care...." Complaint ¶ 29, and that as a result of defendants' actions, they suffered and continue to suffer loss of "her income, services, protection, care, assistance, society, companionship, comfort and guidance, funeral and burial expenses...." Complaint ¶ 35. As explained *supra*, the Court determined that plaintiffs failed to state a cognizable constitutional claim on Nadine White's behalf. It reaches the same conclusion as to plaintiffs' individual capacity claims—plaintiffs have failed to allege facts sufficient to establish a due process violation on a state created danger theory based on a violation of their individual constitutional rights. This conclusion is based on an analysis of the four *Mark* factors applied to the individual capacity claims.

### a. Foreseeable and Fairly Direct Injury

Applying the state created danger test in *Solum v. Yerusalim*, the Third Circuit addressed the question whether parents could bring a due process claim for loss of association with their child, who was killed in an auto accident, allegedly as a result of poorly maintained roads. As the court observed, even where injury to an individual is foreseeable, it does not necessarily follow that injury suffered by the parents of the injured party in the form of a loss of an "assumed constitutional right to associate" with that child is foreseeable. *See Solum v. Yerusalim*, No. 99–1607, 2000 WL 459022 (3d Cir. Mar.8, 2000) (unreported)[8]; *Solum v. Yerusalim*, 1999 WL 395720, at *4 (E.D.Pa. June 17, 1999), *aff'd*, 211 F.3d 1262 (3d Cir.2000). As in *Solum v. Yerusalim*, this Court, in considering the first *Mark* factor, concludes that interference with an "assumed constitu-

tional right to associate" suffered by Marlene White and Dontae Benn was not a foreseeable consequence of defendants' actions.

### b. Culpability

As discussed *supra*, under the second *Mark* factor, actions undertaken by a state official must shock the conscience to establish a claim for a substantive due process violation via section 1983. Because the defendants could not have foreseen that Marlene White and Dontae Benn would suffer a constitutional injury, the Officers could not, as a matter of law, demonstrate the culpability required to establish liability under the state created danger exception. The Third Circuit has explained that "the notion of deliberate indifference contemplates a danger that must at least be foreseeable." *Morse*, 132 F.3d at 910. As the "shocks the conscience" standard requires a greater degree of culpability than the deliberate indifference standard, the Court concludes that plaintiffs cannot establish that the Officers' actions were conscience shocking in the absence of foreseeable injury.

### c. The Foreseeable Plaintiff Requirement

The plaintiffs in this case do not qualify in their individual capacities as foreseeable plaintiffs. As discussed *supra*, the third prong of the *Mark* test " 'contemplat[es] some contact such that the plaintiff was a foreseeable victim of the defendant's acts in a tort sense.' " *Morse*, 132 F.3d at 912 (quoting *Kneipp*, 95 F.3d at 1209 n. 22). As one district court has explained, "[i]f the defendant does not have specific knowledge of the particular plaintiff, no relationship imposing liability exists." *Solum v. Yerusalim*, 1999 WL 395720, at *5 (E.D.Pa. June 17, 1999), *aff'd*, 211 F.3d 1262 (3d Cir.2000). Here, there was no meaningful contact between the Officers

---

**8.** The Court notes that this unreported memorandum opinion has no precedential value, but finds it instructive. *See supra* note 5.

and Marlene White and Dontae Benn—the only relationship plaintiffs have with defendant Officers is based on plaintiffs' relationship with Nadine White. The Court concludes the plaintiffs were not foreseeable victims of the Officers' acts based on this attenuated relationship. *See id.*

### d. Creating an Opportunity that Would not Otherwise Have Existed

Finally, as discussed above, with respect to the fourth prong of the *Mark* test, the Court concludes that the Officers did not create an opportunity for harm to occur to Nadine White—the Officers simply let events unfold as they stood by. *See Burke,* 40 F.Supp.2d at 282. From this conclusion, it follows that the Officers did not create an opportunity for injury to be inflicted on Marlene White and Dontae Benn as injuries suffered in their individual capacities flow from the private violence inflicted on Nadine White by Jeffrey Sessoms. Thus, plaintiffs have not alleged facts in their complaint sufficient to meet the fourth prong of the *Mark* test.

Plaintiffs have failed to allege in their complaint facts sufficient to meet all four requirements of the *Mark* case with respect to their individual capacity claims. Thus, the Court concludes with respect to such claims that plaintiffs have failed to state a claim upon which relief can be granted against defendant Officers under the state created danger theory of liability.

### B. Qualified Immunity

■ Having concluded that the plaintiffs have failed to state a claim upon which relief can be granted, the Court will now turn to the issue of qualified immunity. It is well settled that government officials are entitled to a defense of qualified immunity when "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would not have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). Because qualified im-

munity turns on whether a constitutional right was clearly established, the threshold inquiry is whether plaintiffs allege a cognizable constitutional injury. *See, e.g., Sharrar v. Felsing,* 128 F.3d 810, 826 (3d Cir. 1997) (citing *Siegert v. Gilley,* 500 U.S. 226, 232, 111 S.Ct. 1789, 1793, 114 L.Ed.2d 277 (1991)); *Estate of Burke v. Mahoney City,* 40 F.Supp.2d 274, 283 (E.D.Pa.1999), *aff'd,* 213 F.3d 628 (3d Cir.2000). As discussed in Part IV(A), the Court does not conclude that plaintiffs allege a violation of the Fourteenth Amendment that is actionable under § 1983. Failure to establish a constitutional violation clearly entitles the Officers to qualified immunity. *See In re City of Philadelphia Litig.,* 158 F.3d 711, 719 (3d Cir.1998).

■ Even if the Court were to find that plaintiffs' complaint alleges facts sufficient to prove the deprivation of a constitutional right, the Court concludes that the constitutional rights claimed on Nadine White's behalf were not clearly established. As the Third Circuit has explained, "the courts are required to conduct more than a generalized inquiry into whether an abstract constitutional right is implicated." *In re City of Philadelphia Litig.,* 158 F.3d 711, 718 (3d Cir.1998). "The level of specificity required must establish that the contours of the constitutional right alleged are sufficiently clear that a reasonable official would understand that his actions violate that right." *Id. See Bartholomew v. Commonwealth of Pennsylvania,* 221 F.3d 425, 428–29 (3d Cir.2000) (concluding that constitutional rights must be established with specificity in order to be considered "clearly established").

In this case, plaintiffs generally allege that the Officers violated Nadine White's Fourteenth Amendment due process rights, invoking her rights to life and liberty. Complaint ¶¶ 25, 33–35. In contrast, the cases in which officers have been found liable on a state created danger theory have "narrowly delineated the situations under which state actors have an affirmative duty to act." *Burke,* 40 F.Supp.2d at

284. *See also Kneipp,* 95 F.3d at 1209–11; *Morse,* 132 F.3d at 908–10. As of May 1998, the time of the constitutional violation alleged in this case, there were no cases in which a constitutional deprivation had been found based on similar facts. The Court thus does not conclude that the right to be rescued by the police in response to a 911 call under the facts alleged in the complaint was clearly established under the Fourteenth Amendment. Because the right was not clearly established, the Court concludes that the constitutional right alleged in this case is not one about which a reasonable officer would have known. *See Harlow,* 457 U.S. at 818, 102 S.Ct. at 2738, 73 L.Ed.2d 396.

In addition, even if the Court assumes, without deciding, that plaintiffs had an individual constitutional right to associate with Nadine White, the defendant Officers did not violate that right, as discussed in Part IV(A)(2), *supra.* The Court thus holds that defendant Officers are entitled to qualified immunity as a matter of law. *See In re City of Philadelphia Litig.,* 158 F.3d 711, 719 (3d Cir.1998).

## C. Claims Against the City of Philadelphia Under 42 U.S.C. § 1983

■ Plaintiffs assert claims against the City of Philadelphia ("the City") for failing to adopt and implement policy regarding the proper handling 911 calls and failing to train its police officers in the proper response to such calls. Under *Monell v. Dep't of Soc. Servs. of the City of New York,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), a municipality may only be held liable under § 1983 where the municipality itself causes a constitutional violation. To establish *Monell* liability, a plaintiff must " 'identify the challenged policy, [practice or custom,] attribute it to the city itself, and show a causal link between execution of the policy, [practice or custom] and the injury suffered.' " *Fullman v. Philadelphia Int'l Airport,* 49

F.Supp.2d 434, 445 (E.D.Pa.1999) (quoting *Losch v. Borough of Parkesburg,* 736 F.2d 903, 910 (3d Cir.1984)). Furthermore, the plaintiff must show deliberate indifference on the part of the municipality by "demonstrat[ing] by specific scienter-like evidence that the [municipality] established or maintained [a] policy, practice or custom with deliberate indifference to the rights of citizens with whom the police would come into contact." *Martin v. City of Philadelphia,* 2000 WL 1052150, at \*9 (E.D.Pa. July 24, 2000).

■ As an initial matter, the Court must examine the issue of whether municipal liability is dependent upon a finding of liability on the part of an individual state actor. The Supreme Court has held that a municipal entity cannot be liable under the Fourth Amendment without a finding of liability on the part of an individual officer. *City of Los Angeles v. Heller,* 475 U.S. 796, 106 S.Ct. 1571, 89 L.Ed.2d 806 (1986) (per curiam). The Third Circuit, however, has distinguished *Heller* from a situation in which the constitutional claims brought against individual officers are separate and independent from the claims brought against a municipality. *See Fagan v. City of Vineland,* 22 F.3d 1283, 1292 (3d Cir. 1994) (*Fagan I* ); *Cannon v. City of Philadelphia,* 86 F.Supp.2d 460, 472–75 (E.D.Pa. 2000). Unlike *Heller,* where the city was sued solely on the theory that the city was responsible for an individual officer's actions, *Heller,* 475 U.S. at 799, 106 S.Ct. at 1573, the *Fagan I* court concluded that plaintiffs' claims were viable as they asserted "separate, independent constitutional claims" against the officers and the city. *Fagan I,* 22 F.3d at 1292.

■ In this case, plaintiffs allege separate, independent claims against the City, claiming that the City was deliberately indifferent in its (1) failure to adopt and implement a 911 policy to handle Priority 1 calls and (2) failure to train.[9] Complaint

9. Specifically, plaintiffs allege (1) that the City was deliberately indifferent in failing "to

adopt and implement 911 policies and procedures that properly guide officers in their

¶ 26. For the following reasons, the Court concludes that the plaintiffs have not alleged facts sufficient to state a claim against the City under § 1983.

Regardless of the theory under which suit is brought against the City, the first inquiry in any § 1983 claim "is to identify the specific constitutional right allegedly infringed." *Albright v. Oliver*, 510 U.S. 266, 271, 114 S.Ct. 807, 811, 127 L.Ed.2d 114 (1994). *See also Collins v. City of Harker Heights*, 503 U.S. 115, 120, 112 S.Ct. 1061, 1066, 117 L.Ed.2d 261 (1992) (identifying two issues that must be analyzed in any § 1983 claim—"(1) whether plaintiff's harm was caused by a constitutional violation, and (2) if so, whether the city is responsible for that violation").

In their claim against the City, plaintiffs generally allege substantive due process violations, asserting that Nadine White was deprived of her rights as secured under the Fourteenth Amendment. As the Court determined above, this claim fails to identify a cognizable constitutional injury because the Officers' conduct did not satisfy the four part test set forth in *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1152 (3d Cir.1995). In addition, even if the Court assumes that the City has a policy or custom of providing poor 911 service or failing to train officers to perform adequate rescue services, this failure did not inflict constitutional injury—substantive due process under the Fourteenth Amendment does not secure a right to rescue services under the facts of this case. *See Regalbuto v. City of Philadelphia*, 937 F.Supp. 374, 379 (E.D.Pa.1995) ("[T]he Due Process Clause does not impose an affirmative obligation on the state to provide the public with adequate emergency rescue services."), *aff'd*, 91 F.3d 125 (3d

Cir.1996); *see also Archie v. City of Racine*, 847 F.2d 1211, 1220 (7th Cir.1988); *Mendoza v. City of Philadelphia*, 2000 WL 633048 (E.D.Pa. May 5, 2000); *Huston v. Montgomery County*, 1995 WL 766308, at *3 (E.D.Pa. Dec.28, 1995); *cf. DeShaney v. Winnebago County Dep't of Social Services*, 489 U.S. 189, 196, 109 S.Ct. 998, 1003, 103 L.Ed.2d 249 (1989) (holding that "the Due Process Clauses generally confer no affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty, or property interests"). In so ruling, this Court is mindful of the Supreme Court's "reluctan[ce] to expand the concept of substantive due process because guideposts for responsible decision-making in this uncharted area are scarce and open-ended." *Collins*, 503 U.S. at 125, 112 S.Ct. at 1068.

For the foregoing reasons, the Court concludes that plaintiffs have not identified in their complaint a cognizable constitutional right. In the absence of such a right, there can be no constitutional violation. Thus, plaintiffs have failed to state a § 1983 claim upon which relief can be granted against the City based on allegations that the City violated Nadine White's substantive due process rights.

## D. State Law Claims: Wrongful Death and Survival Actions

Under 28 U.S.C. § 1367, a district court may decline to exercise its supplemental jurisdiction over state law claims if "the district court has dismissed all claims over which it has original jurisdiction...." 28 U.S.C.A. § 1367(c)(3) (West Supp.1999). In interpreting this provision, the Third Circuit has held that "where the claim over which the district court has original jurisdiction is dismissed before trial, the dis-

---

response to Priority 1 calls"; and (2) that the city had a policy and practice of failing to adequately train and supervise its officers in three specific areas: (a) the officers' "constitutional obligation[ ] not to increase the risk of harm" when intervening in a situation for an endangered individual; (b) the officers' "responsibilities and duties in responding to

Priority 1 (crimes in progress) calls to the 911 system"; and (c) the officers' "authority and duty to enter residences to save lives or prevent serious physical injury where there is probable cause to believe that entry is necessary to save a life and where the failure to enter will dissuade or *prevent other persons* from providing assistance." Complaint ¶ 26.

trict court must decline to decide the pendant state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so." *Borough of West Mifflin v. Lancaster*, 45 F.3d 780, 788 (3d Cir.1995).

The Court concludes that there is no affirmative justification to retain jurisdiction over plaintiffs' state law claims in this case. Because the Court will grant defendant's motion to dismiss as to the federal claims, the Court declines to exercise supplemental jurisdiction over plaintiffs' state law wrongful death and survival actions brought against the Officers in their individual capacities, and those claims will be dismissed without prejudice.

## V. CONCLUSION

For the foregoing reasons, the Court will grant Defendants' Motion to Dismiss. An appropriate order follows.

### *ORDER*

**AND NOW,** to wit, this 27th day of October, 2000, upon consideration of the Complaint (Document No. 1, filed May 24, 2000); Defendants' Motion to Dismiss (Document No. 4, filed June 16, 2000) filed on behalf of defendants City of Philadelphia, Police Officer Bruce Wright and Police Officer Omharr Jenkins; Plaintiffs' Opposition to Defendants' Motion to Dismiss Plaintiffs' Complaint (Document No. 6, filed July 31, 2000); and Defendants' Reply Memorandum of Law in Further Support of Their Motion to Dismiss (Document No. 7, filed Aug. 7, 2000), **IT IS ORDERED** that:

1. Defendants' Motion to Dismiss is **GRANTED** as to plaintiffs' claims under 42 U.S.C. § 1983 against Officers Bruce Wright, Omharr Jenkins, and John Doe A through Z, and those claims are **DISMISSED WITH PREJUDICE;**

2. Defendants' Motion to Dismiss is **GRANTED** as to plaintiffs' claims under 42 U.S.C. § 1983 against the City of Phila-

delphia and those claims are **DISMISSED WITH PREJUDICE;**

3. Plaintiffs' claims under Pennsylvania state law against Officers Bruce Wright, Omharr Jenkins, and John Doe A through Z, are **DISMISSED WITHOUT PREJUDICE** for lack of subject matter jurisdiction.