James Lloyd KEPNER, Individually and as the Administrator for the Estate of Carol Sue Kepner,

v.

Feather O. HOUSTOUN, et al.

Maria Jordan, et al.,

v.

Feather O. Houstoun, et al.

Civil Action Nos. 01–2988, 01–3005.

United States District Court, E.D. Pennsylvania.

Sept. 26, 2001.

495

R. Erik Chizmar, Levy Angstreich Finney, Philadelphia, PA, for James Lloyd Kepner.

Gerald J. Mullaney, Jr., Mullaney, Mullaney & Nikolaou, LLP, Skippack, PA, for Maria and Geoffrey Jordan.

John O.J. Shellenberger, III, Office of the Attorney General, Philadelphia, PA, for defendants.

## MEMORANDUM

BARTLE, District Judge.

These two actions arise out of a tragic hostage situation that occurred at the Norristown State Hospital ("NSH") in June, 1999.

Plaintiffs Maria Jordan ("Jordan") and her husband Geoffrey Jordan, as well as James Kepner, individually and as administrator of the Estate of his late wife, Carol Kepner ("Kepner") have sued under 42 U.S.C. § 1983 twenty-seven Pennsylvania state officials and employees including the Pennsylvania Secretary of Public Welfare, various employees at NSH, the Pennsylvania State Police Commissioner, and various state police officers. Jordan and her husband also have asserted state law claims against a private detective agency and two of its employees. In addition, Geoffrey Jordan and James Kepner have each alleged loss of consortium. Before the court are the motions of all the defendants employed by the Commonwealth of Pennsylvania to dismiss the § 1983 claims under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted. Said defendants also claim qualified immunity. The plaintiffs rely on the state-created danger theory of liability.

For purposes of the pending motions, we accept as true the well-pleaded factual allegations in the complaints and draw in plaintiffs' favor any reasonable inferences therefrom. *See Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984); *Oshiver v. Levin, Fishbein, Sedran & Berman,* 38 F.3d 1380, 1391 (3d Cir.1994). Of course, we need not accept bald assertions or legal conclusions. *Morse v. Lower Merion Sch. Dist.,* 132 F.3d 902, 906 (3d Cir.1997).

According to the complaint, from at least August, 1997 until his termination on April 16, 1999, Denis Czajkowski was employed as a nurse at NSH, which is operated by the Pennsylvania Department of Public Welfare. Before he was hired, NSH knew that Czajkowski had abused alcohol and drugs. NSH was also informed by a physician that Czajkowski had an adjustment disorder and a drug addiction, but that if he followed his treatment program, he would be fine. In 1997, Czajkowski's father advised an NSH employee that his son was schizophrenic and believed there was a conspiracy against him.

During his term of employment, Czajkowski was given numerous warnings for tardiness and poor attendance. On August 17, 1998, he was arrested and charged with possession of heroin, an event about which NSH employees became aware. In early November, 1998, he was placed on a medical leave of absence and was instructed by the NSH Personnel Director that he was not permitted on hospital property. On two occasions, however, he appeared on the grounds, and each time he was directed to leave. On one of those occasions, he came to the office of Jordan, an NSH Assistant Superintendent for Nursing Services, who notified NSH security. Czajkowski fled. Finally, on April 16, 1999, he was terminated from his employment. Jordan was one of the persons responsible for his dismissal. On several occasions thereafter, Jordan advised the NSH Labor Coordinator and a NSH Personnel Director that she feared Czajkowski.

On June 16, 1999, at approximately 10:45 a.m., Czajkowski and a private investigator whom he had retained ostensibly to

serve papers, drove to NSH where they eventually made their way into Jordan's office. Czajkowski was seen on the grounds before entering the building where Jordan's office was located, and while various NSH employees called security, no one notified Jordan or Kepner of his presence. In Jordan's office, Czajkowski and the investigator encountered not only Jordan but also Kepner. Czajkowski brandished a revolver, fired it into the ceiling, and took Jordan and Kepner hostage. After allowing the investigator to leave some thirty minutes later, he immediately shot Jordan four times, causing her to bleed profusely.

Soon thereafter, Pennsylvania state police arrived. After superseding the local police, they began to negotiate with Czajkowski. Although his demands were initially rational, they became more and more grandiose and irrational as time passed. Czajkowski became agitated as well. Kepner and Jordan remained hostages in Room 163 from June 16, 1999 through the morning of June 18, 1999. Finally, on June 18, at 8:30 a.m., the state police implemented a plan that they had developed the previous day. They broke a window of Room 163 where Czajkowski held Kepner and Jordan, attempted to pull the curtains out, and unlocked the door. The state police immediately threw a "flash-bang" detonation device into the room to divert Czajkowski's attention whereupon they subdued him and removed the badly wounded Jordan to safety. Unfortunately, between the time the window was broken and the time the state police entered the room, Czajkowski shot Jordan two more times in the chest and abdomen and killed Kepner. The state police apparently never employed a psychiatrist or psychologist to aid them in dealing with Czajkowski.

Plaintiffs contend that defendants violated their substantive due process rights under the Fourteenth Amendment to be free from the arbitrary action of the state government. As noted above, plaintiffs argue that their complaints survive under the state-created danger theory of liability.

Section 1983 reads in relevant part:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.

The statute itself does not create any substantive rights. It simply provides a remedy for rights established under the Constitution or laws of the United States. *Albright v. Oliver*, 510 U.S. 266, 271, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994); *Baker v. McCollan*, 443 U.S. 137, 144 n. 3, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979); *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1141 (3d Cir.1995).

The state-created danger theory had its genesis in *DeShaney v. Winnebago County Department of Social Services*, 489 U.S. 189, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989). There, young Joshua DeShaney, a four year old boy, had been physically abused by his father over a prolonged period of time. The Winnebago County Department of Social Services ("DSS") had long had contact with the father and had good reason to suspect child abuse, but nonetheless it allowed the boy to remain with his father. Ultimately, the father was convicted of child abuse for so severely beating Joshua that the boy suffered permanent brain damage.

Joshua's mother and guardian sued DSS under § 1983, alleging a deprivation of the boy's liberty without substantive due process for failing to intervene to protect him from his father's abuse about which it knew or should have known. While expressing great sympathy for Joshua's plight, the Supreme Court held that no cause of action existed. The Court did recognize that where special relationships are created or assumed by the state, certain constitutional rights may be implicated, and the state has an affirmative obligation to provide protective services. For example, such duties arise where a person is a prisoner or has been involuntarily committed to a mental facility.

Other than in such limited circumstances, the Court explained that "nothing in the language of the Due Process Clause itself requires the State to protect the life, liberty, and property of its citizens against invasion by private actors." *Id.* at 195, 109 S.Ct. 998. The Court continued that the language of the Due Process Clause "cannot fairly be extended to impose an affirmative obligation on the State to ensure that those interests do not come to harm through other means." *Id.* Simply knowing about a person's unfortunate situation does not invoke any obligation on the part of the state to come to that person's aid. The Court made it clear that "[t]he affirmative duty to protect arises not from the State's knowledge of the individual's predicament or from its expressions of intent to help him, but from the limitation which it has imposed on his freedom to act on his own behalf." *Id.* at 200, 109 S.Ct. 998 (citation omitted). Since no special relationship existed between Joshua and the State, it had no constitutional duty to protect him.[1]

The state-created danger theory emanates from the following sentence in *De-Shaney:* "While the State may have been aware of the dangers that Joshua faced in the free world, it played no part in their creation, nor did it do anything to render him any more vulnerable to them." *Id.* at 201, 109 S.Ct. 998. This language has been interpreted to mean that even if no special relationship existed, state actors may face liability under § 1983 if they played a role in the creation of the danger.

Our Court of Appeals has explicitly adopted the state-created danger theory in *Kneipp v. Tedder,* 95 F.3d 1199 (3d Cir. 1996). The parents and legal guardians of Samantha Kneipp sued several Philadelphia police officers and the City of Philadelphia under § 1983. Samantha, who was obviously intoxicated, and her husband were having an altercation on a highway as they were walking home late on a cold January evening. After the police stopped them, her husband was allowed to return home to relieve a babysitter. Thereafter, the police officer sent Samantha on her way alone. She never made it. She was later found unconscious nearby, with permanent brain damage. Plaintiffs claimed that by voluntarily assuming responsibility for her protection when her husband was allowed to leave for home by himself, the police officers affirmatively created a danger and increased the risk that she might be injured when they later abandoned her. The court articulated a four prong test which must be met if a state actor is to be found liable under the state-created danger theory:

---

1. In passing, in footnote 4 of his opposing brief, plaintiff Kepner contends that the state police had a special relationship with Carol Kepner which created an affirmative duty on their part to act on her behalf. This argument is clearly without merit. Kepner was not in state custody or control when she was a hostage. Rather, she was in the custody and control of Czajkowski, her kidnapper.

(1) the harm ultimately caused was foreseeable and fairly direct; (2) the state actor acted in willful disregard for the safety of the plaintiff; (3) there existed some relationship between the state and the plaintiff; (4) the state actors used their authority to create an opportunity that otherwise would not have existed for the third party's crime to occur.

*Kneipp,* 95 F.3d at 1208 (quoting *Mark v. Borough of Hatboro,* 51 F.3d at 1152). In reversing the District Court's grant of summary judgment in favor of the defendants, the Court of Appeals concluded that, "[w]hen viewed in the light most favorable to the legal guardians, the evidence submitted was sufficient to raise a triable issue of fact as to whether the police officers affirmatively placed Samantha in a position of danger." *Id.* at 1211.

In *County of Sacramento v. Lewis,* 523 U.S. 833, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998), decided after *DeShaney* and *Kneipp,* the Supreme Court reminded us that the Fourteenth Amendment is not "a font of tort law to be superimposed upon whatever systems may already be administered by the States." 523 U.S. at 848, 118 S.Ct. 1708 (quoting *Paul v. Davis,* 424 U.S. 693, 701, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976)). *County of Sacramento* was a § 1983 action involving a high speed chase in which the police patrol car skidded into and killed the passenger on the motorcycle being pursued. The Court reiterated that substantive due process only protects the individual against arbitrary action of the government and that the threshold for finding the arbitrary exercise of power will depend upon the facts of each particular case. The degree of culpability can range from deliberate indifference to "shock the conscience" requiring a purpose to cause

harm. Thus, for example, the deliberate indifference standard is appropriate in a case involving the proper medical treatment for an inmate since prison officials have the time for calm reflection. On the other hand, "when unforeseen circumstances demand an officer's instant judgment" such as during a prison riot [2] or a high speed chase, "even precipitate recklessness fails to inch close enough to harmful purpose to spark the shock that implicates 'the large concerns of governors and the governed.'" *Id.* at 853, 118 S.Ct. 1708 (citation omitted). With respect to a high speed chase, the Court concluded that no viable substantive due process claim exists unless there is an "intent to harm the suspects or to worsen their legal plight." *Id.* at 854, 118 S.Ct. 1708 (citation omitted).

■ We must determine whether the well-pleaded facts here, if true, can constitute arbitrary governmental action giving rise to a substantive due process violation. As our Court of Appeals has observed, "[t]he exact degree of wrongfulness necessary to reach the 'conscience shocking' level depends upon the circumstances of a particular case." *Miller v. City of Philadelphia,* 174 F.3d 368, 375 (3d Cir.1999) (citation omitted). We believe the facts set forth in the complaints, at least as they relate to the state police, are analogous to those involving the prison riot and the high speed chase. In those scenarios, as in the hostage situation, there is significant pressure for quick decisions and little or no time for calm deliberation and reflection that usually exists when considering appropriate medical treatment for a prisoner. Even if the intent-to-cause-harm test used in the high speed chase cases raises the bar too far here, we believe nonetheless

---

**2.** The Supreme Court used this example, recognizing that the analysis is under the Eighth Amendment.

that a very high degree of wrongfulness is necessary to establish liability. The appropriate level of culpability, we conclude, is whether, under the circumstances, the activity of the state police defendants shocks the conscience. *White v. City of Philadelphia*, 118 F.Supp.2d 564, 570 (E.D.Pa.2000).

■ Keeping *County of Sacramento* in mind, we turn to the four-prong state-created danger test articulated in *Kneipp*. Even assuming the plaintiffs can establish the first and third prongs that the harm ultimately caused was foreseeable and fairly direct and that some relationship existed between Jordan and Kepner and the state, plaintiffs cannot satisfy the second and fourth elements as to the state police.

Under the formulation in *Kneipp*, the complaints must set forth facts sufficient to establish that state actors acted in willful disregard for the safety of Jordan and Kepner. Specifically, plaintiffs contend that the action of the state police satisfied this standard when they rushed into Room 163 at NSH where the two women were being held hostage. According to the pleadings, it was between the time of the break-in and the subsequent seconds when Czajkowski was subdued that Czajkowski shot and killed Kepner and again shot Jordan. Plaintiffs maintain that had the state police not proceeded as they did, Kepner's life would have been spared and Jordan would not have suffered additional wounds.

Under *County of Sacramento*, the conduct of the state police must shock the conscience. While their action surely had grave risks, taking no action also had grave risks. It is important to remember that Czajkowski, with serious mental problems, had previously shot Jordan and was making demands that were becoming increasingly bizarre. In hindsight, maybe the state police were negligent and should have taken a different path, but negligence is not the applicable constitutional standard. *County of Sacramento*, 523 U.S. at 848–49, 118 S.Ct. 1708. It was clearly a most difficult, if not heart-wrenching decision, to attempt to rescue hostages from a demented kidnapper. We do not believe any reasonable juror could find, on the facts alleged, that the state police acted in a way that shocks the conscience. *Id.; White v. City of Philadelphia*, 118 F.Supp.2d 564 (E.D.Pa.2000). Furthermore, in our view, the result is the same even if we were to apply the less rigorous requirements of deliberate indifference to or willful disregard for the safety of the victims. The outcome of the hostage crisis was indeed tragic, especially for Carol Kepner, but simply because it was tragic does not mean that the Constitution was violated.

The final prong of the state-created danger test requires plaintiffs to prove that the state actors used their authority to create an opportunity that otherwise would not have existed for the third party's crime to occur. *Kneipp*, 95 F.3d at 1208. Again, the complaints fall short. The state police did not arrive on the scene until after Czajkowski had taken Jordan and Kepner hostage. The state police sought to apprehend Czajkowski and save the lives of these two women. They did not create the opportunity for the harm to occur. The opportunity already existed by the time they reached NSH. Indeed, as heretofore noted, Czajkowski had previously shot Jordan and, of course, had the opportunity and ability to kill both Jordan and Kepner before the state police stormed Room 163. As our Court of Appeals stated in *Morse v. Lower Merion School District*, 132 F.3d 902, 915 (3d Cir.1997), "the dispositive factor appears to be whether the state has in some way placed the plaintiff in a dangerous position that was foreseeable, and not

whether the act was more appropriately characterized as an affirmative act or an omission." The state police did not in any way place Jordan or Kepner in a dangerous position. On the contrary, they sought to extricate these two individuals from any further danger by seizing Czajkowski. In sum, it was Czajkowski, a third party, who created the dire situation. *Salas v. Carpenter*, 980 F.2d 299 (5th Cir.1992).

 Plaintiffs have also sued the Secretary and Deputy Secretary of Public Welfare, as well as Public Welfare Department employees who worked at NSH. At most, it can be said that some of these individuals knew of Czajkowski's dangerous propensities, took no action to keep him off the grounds of NSH, and failed to warn Jordan and Kepner of his presence on June 16, 1999. These defendants, like the state police, did not create the opportunity for Czajkowski to commit his crimes or place Jordan and Kepner in a dangerous position. *DeShaney*, 489 U.S. at 201, 109 S.Ct. 998; *Kneipp*, 95 F.3d at 1209; *D.R. by L.R. v. Middle Bucks Area Vocational Technical Sch.*, 972 F.2d 1364, 1373–76 (3d Cir.1992) (en banc). In any event, substantive due process under the Fourteenth Amendment does not impose on a public employer or supervisors or fellow employees the duty to provide an even nominally safe and secure working environment. *Collins v. City of Harker Heights*, 503 U.S. 115, 126, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992).[3]

It goes without saying that we sympathize with the husband and family of Carol Kepner who lost her life during this tragic series of events. Likewise, we sympathize with the plight of Maria Jordan, who suffered grievous injuries. Nonetheless, we cannot allow our sympathies to prevent us from following the law.

The motion of state defendants to dismiss plaintiffs' § 1983 claims will be granted. Because we are dismissing all federal claims, we need not decide the issue of qualified immunity. In addition, we will exercise our discretion and decline jurisdiction over the supplemental state claims as to the moving defendants. *See* 28 U.S.C. § 1367.

The *Jordan* complaint also alleges state law claims against the detective agency that Czajkowski engaged and against two of its employees, one of whom accompanied Czajkowski on his fateful trip to NSH. There is no diversity of citizenship between the Jordans and these remaining defendants who are all citizens of Pennsylvania. Consequently, we will dismiss the action against these three defendants for lack of subject matter jurisdiction.

### ORDER

AND NOW, this 26th day of September, 2001, for the reasons set forth in the accompanying Memorandum, it is hereby ORDERED that the motion of all defendants to dismiss the complaint is GRANTED.

---

**3.** Plaintiff in *Kepner* also argues that some defendants are liable for an unconstitutional policy, practice, or custom resulting in Carol Kepner's death. *See Monell v. Dep't of Social Servs. of City of New York*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Public officials or supervisors cannot be held liable on such a theory unless they have engaged in "some affirmative conduct … that played a role" in the constitutional violation. *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1478 (3d Cir.1990). This standard can be satisfied either by the supervisor's direct involvement or by their "personal direction or … actual knowledge and acquiescence." *Id.* (quoting *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir.1988)). The facts set forth in the complaint do not allege any constitutional violation, much less one caused by a policy, practice, or custom.

502

*ORDER*

AND NOW, this 26th day of September, 2001, for the reasons set forth in the accompanying Memorandum, it is hereby ORDERED that:

(1) the motion of defendants Feather O. Houstoun, Charles G. Curie, George Kopchick, Aidan Altenor, Robert Direso, Donald Adams, Richard Sokolowski, William Stephens, Roger Stults, Bernadine West, Sandra Mitchell, Jack Davis, Mary Anne Lawler, Angela Alexander, Pat Conway, Commissioner Paul J. Evanko, Deputy Commissioner Lieutenant Colonel Thomas Courey, Major Robert G. Wertz, Captain Thomas J. LaCrosse, Captain Robert B. Titler, Captain James Gillison, Lieutenant David B. Kresier, Lieutenant Barry Sparks, Lieutenant Robert D. Queen, Sergeant Gregory W. Mitchell, Corporal David Frisk, and Trooper Martin M. Carbonell to dismiss the complaint is GRANTED; and

(2) the complaint is DISMISSED against the remaining defendants Ace Detective Agency, Inc., Dominic Farinella, and Michael Soltys for lack of subject matter jurisdiction.